**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Norfolk Division**

_____
                                                    )
WARDS CORNER BEAUTY ACADEMY,                        )
                                                    )
      Plaintiff,                               )
                                                    )
      v.                                       )     Civil No.: 2:16-cv-639-MSD-RJK
                                                    )
NATIONAL ACCREDITING COMMISSION OF                  )
CAREER ARTS & SCIENCES,                             )
                                                    )
      Defendant.                               )
_____            )

**MEMORANDUM IN SUPPORT OF DEFENDANT NATIONAL ACCREDITING
COMMISSION OF CAREER ARTS & SCIENCES'
<u>MOTION FOR SUMMARY JUDGMENT</u>**

**TABLE OF CONTENTS**

Page

I.    INTRODUCTION ................................................................................................1

II.   APPLICABLE STANDARD................................................................................2

III.  ARGUMENT ......................................................................................................3

A.    Summary Judgment on Count I Should be Entered in NACCAS' Favor because NACCAS' Withdrawal of WCBA's Accreditation was Based on Substantial Evidence and was Not Arbitrary or an Abuse of Discretion................3

1.    NACCAS Determined WCBA's Section 8.18 Deadline Consistent with NACCAS' Policy and WCBA's Self-Reported, Self-Certified 2013 Annual Report....................................................................................5

i.    NACCAS' Policy, Practice, and Procedures ..................................5

ii.   Application of NACCAS' Policy to WCBA's Process ..................8

(a)   NACCAS Provided WCBA with Written Notice of WCBA's Section 8.18 Deadline. .........................................9

(b)   NACCAS Provided WCBA with Reasonable Time to Address Any Concerns About WCBA's Section 8.18 Deadline. .................................................................9

(c)   NACCAS Treated WCBA Consistently with Regard to WCBA's Section 8.18 Period...........................10

2.    NACCAS's Commission Determined that WCBA had Not Demonstrated Compliance with NACCAS' Graduation Outcome by WCBA's Section 8.18 Deadline Because WCBA Failed to Substantiate a Compliant Graduation Rate in Light of the Systemic Discrepancies in WCBA's Annual Report. ..............................................11

i.    NACCAS' Annual Report and Monitoring Process .....................11

ii.   Application of NACCAS' Annual Report and Monitoring Policy to the Commission's Decision to Withdraw WCBA's Accreditation ................................................................16

(a)   NACCAS met the criteria of 34 C.F.R. § 602.25(a) by providing WCBA with adequate written specification of its requirements. ......................................16

(b)   NACCAS met the criteria of 34 C.F.R. § 602.25(b) by providing WCBA with a reasonable period of time to comply with requests for information and documents. ........................................................................17

(c)   NACCAS met the criteria of 34 C.F.R. § 602.25(c) by providing WCBA with written specification of deficiencies. ...................................................................18

(d)     NACCAS met the criteria of 34 C.F.R. § 602.25(d) by providing WCBA with sufficient opportunity for a written response regarding deficiencies. ..........................19

(e)     NACCAS met the criteria of 34 C.F.R. § 602.25(e) by notifying WCBA in writing of the Commission's Adverse Action. ...............................................20

(f)     NACCAS treated WCBA consistently with regard to its analysis of WCBA's 2014 AR and 2014 revised AR submission. ......................................21

3.    NACCAS's Appeal Review Panel Affirmed the Commission's Decision because It Unanimously Determined that the Commission's Decision was Supported by Substantial Evidence. ............22

i.     NACCAS' Appeal Process ............................................................22

ii.    NACCAS' Appeal Process Applied to the Panel's Decision to Affirm the Commission's Decision ............................................23

(a)     NACCAS met the criteria of 34 C.F.R. § 602.25(f) by providing WCBA with an opportunity to appeal the Commission's Adverse Action. ...................................23

(b)     NACCAS met the criteria of 34 C.F.R. § 602.25(f)(1)(i) and (ii) by constituting a Panel that did not include members from the Commission and subjecting the Panel members to a conflict of interest policy. ..................................................................23

(c)     NACCAS met the criteria of 34 C.F.R. § 602.25(f)(2) by recognizing WCBA's right to counsel. ...........................................................................24

(d)     NACCAS met the criteria of 34 C.F.R. § 602.25(f)(1)(iii) and (iv) by constituting a Panel that has and did exercise authority to decide WCBA's appeal. ...........................................................................25

(e)     NACCAS met the criteria of 34 C.F.R. § 602.25(g) by notifying WCBA of the result of WCBA's appeal and the basis for that result. ....................................26

4.    Chairman Bouman was Not Required to Recuse Himself. ........................26

i.     NACCAS' Code of Ethics ............................................................26

ii.    NACCAS' Code of Ethics as Applied to Chairman Bouman........27

B.    Summary Judgment on Count II Should be Entered in NACCAS' Favor because No Evidence Supports WCBA's Claims for Injunctive Relief or Declaratory Relief. ...........................................................................28

1.    WCBA Cannot Establish Actual Success on the Merits. ..........................29

2.    WCBA Cannot Establish "That Remedies Available at Law, Such as Monetary Damages, are Inadequate to Compensate for That

Injury" in Light of Its Expert's Valuation and Lost Profits
Opinions. ................................................................................................29

3.    WCBA Cannot Establish that the Balance of Hardships Weigh in
Its Favor. ..............................................................................................30

4.    WCBA Cannot Establish that the Public Interest would Not be
Disserved by a Permanent Injunction. ..................................................30

IV.    CONCLUSION..............................................................................................................30

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Almy v. Sebelius*,
    679 F.3d 297 (4th Cir. 2012) ................................................................ 3

*Amoco Prod. Co. v. Vill. of Gambell, AK*,
    480 U.S. 531, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987).......................... 28

*Anderson v. Liberty Lobby, Inc.*,
    477 U.S. 242, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986).......................... 2

*Bowens v. N.C. Dept. of Human Res.*,
    710 F.2d 1015 (4th Cir. 1983) .............................................................. 4

*Celotex Corp. v. Catrett*,
    477 U.S. 317, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986).......................... 2

*Charbonnages de France v. Smith*,
    597 F.2d 406 (4th Cir. 1979) ................................................................ 2

*Christopher Phelps & Assocs., LLC v. Galloway*,
    492 F.3d 532 (4th Cir. 2007) ................................................................ 29

*Citizens to Preserve Overton Park, Inc. v. Volpe*,
    401 U.S. 402, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971 .............................. 4

*Cleveland Bd. of Educ. v. Loudermill*,
    470 U.S. 532, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).......................... 3

*Consol. Edison Co. v. NLRB*,
    305 U.S. 197, 59 S. Ct. 206, 83 L. Ed. 126 (1938)................................. 3

*Craig v. Chater*,
    76 F.3d 585 (4th Cir. 1996) ................................................................. 4

*eBay Inc. v. MercExchange, L.L.C.*,
    547 U.S. 388, 126 S. Ct. 1837, 164 L. Ed. 2d 641 (2006)........................ 29

*Emmett v. Johnson*,
    532 F.3d 291 (4th Cir. 2008) ................................................................ 2

*JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*,
    264 F.3d 459 (4th Cir. 2001) ................................................................ 2

*Morris v. City of Danville*,
    744 F.2d 1041 (4th Cir. 1983) .............................................................. 4

*Nat'l Enters. v. Barnes*,
    201 F.3d 331 (4th Cir. 2000) ................................................................ 2

iv

*Prof'l Massage Training Ctr. v. Accreditation Alliance of Career Sch. & Colls.*,
   781 F.3d 161 (4th Cir. 2015) ................................................................... 3, 4, 27, 28

*Sojourner-Douglass Coll. v. Middle States Ass'n of Colls. and Schs.*,
   ELH-15-01926, 2015 U.S. Dist. LEXIS 114288 (D.Md. Aug. 27, 2015) ...................... 4, 5, 27

*St. Andrews Presbyterian Coll. v. S. Ass'n of Colls. & Sch., Inc.*,
   679 F. Supp. 2d 1320 (N.D. Ga. Sep. 30, 2009) .................................................. 5, 27

*Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*,
   459 F.3d 705 (6th Cir. 2006) ............................................................................ 3

*Wilfred Acad. of Hair & Beauty Culture v. S. Ass'n of Colls. & Schs.*,
   957 F.2d 210 (5th Cir. 1992) ............................................................................ 4

## Statutes

20 U.S.C. § 1099b............................................................................................ 30

28 U.S.C. § 2201 .............................................................................................. 29

## Rules

Fed. R. Civ. P. 56............................................................................................. 2

## Treatises

34 C.F.R. § 602 ............................................................................................... 30

34 C.F.R. § 602.20........................................................................................... 5, 17

34 C.F.R. § 602.25 ................................................................ 1, 3, 11, 16, 18, 19, 20, 23, 26

34 C.F.R. §§ 602.36......................................................................................... 27

## I.   __INTRODUCTION__

NACCAS satisfied Wards Corner Beauty Academy's ("WCBA") common law due process rights because it consistently followed (i) its policies and procedures and (ii) criteria set by 34 C.F.R. § 602.25 when it determined WCBA's 8.18 compliance deadline and when its Board of Commissioners ("Commission") decided, and its Appeal Review Panel ("Panel") affirmed, the withdrawal of WCBA's accreditation on the basis of substantial evidence. Between December 12, 2014 and January 4, 2016, NACCAS gave WCBA detailed instructions (through multiple letters, published instructions, a mandatory workshop, and multiple webinars) on how to determine which students should be included in an annual report cohort grid (an aggregate of data used to calculate outcome rates for an institution's annual report for a given year), how to determine the student's scheduled graduation date (which determines whether the student should be included in the cohort), and what documentation supports the data reported in the institution's annual report cohort grid.  Despite all of the guidance, assistance, and resources WCBA received from NACCAS, WCBA's 2014 Annual Report submissions did not demonstrate compliance and WCBA's owner and employees' deposition testimony establish that they did not and still do not understand how to determine a student's scheduled graduation date and, therefore, which students should be included in a cohort.

WCBA's arguments in support of its claim of a violation of due process demand that NACCAS treat WCBA more favorably than other institutions while in the same breath asserting that NACCAS failed to treat WCBA consistent with its policies and practices.  NACCAS followed its policies and practices in applying the Section 8.18 compliance deadline, but WCBA asserts that NACCAS should have acted differently and sua sponte initiated a change in WCBA's remediation period without WCBA bringing its own erroneous reporting to NACCAS' attention in writing.  NACCAS determines outcomes compliance by analyzing the accuracy and

verifiability of cohort data based on school-submitted backup documentation, but WCBA asserts that NACCAS should accept WCBA's calculations even though WCBA's backup documentation does not verify that the individuals in the graduation cohort from which the calculation is based are the correct list of individuals.  Chairman Bouman followed NACCAS' conflict of interest policy (which met the U.S. Department of Education's criteria as evidenced by the Department's renewal of recognition of NACCAS), and did not vote on the Commission's unanimous decision to withdraw WCBA's accreditation, but WCBA argues that a different conflict of interest policy should apply for WCBA's process.  For the reasons set forth below, summary judgment should be entered in NACCAS' favor and the Amended Complaint dismissed.

## II.  **APPLICABLE STANDARD**

A court may enter summary judgment only if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law.  *See* FED. R. CIV. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986); *Emmett v. Johnson*, 532 F.3d 291, 297 (4th Cir. 2008). However, summary judgment is inappropriate if any material fact at issue "may reasonably be resolved in favor of either party." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986); *JKC Holding Co. LLC v. Washington Sports Ventures, Inc.*, 264 F.3d 459, 465 (4th Cir. 2001).

The moving party bears the burden of showing there is no genuine issue as to any material fact. *See Charbonnages de France v. Smith*, 597 F.2d 406, 414 (4th Cir. 1979).  In response, the nonmoving party must then demonstrate specific facts showing that a genuine issue remains for trial.  *Celotex*, 477 U.S. at 324.  "[T]he non-moving party must proffer sufficient evidence on which a reasonable jury could find in its favor."  *Nat'l Enters. v. Barnes*, 201 F.3d 331, 335 (4th Cir. 2000) (citing *Anderson*, 477 U.S. at 249).

III.   **ARGUMENT**

    A.   **Summary Judgment on Count I Should be Entered in NACCAS' Favor because NACCAS' Withdrawal of WCBA's Accreditation was Based on Substantial Evidence and was Not Arbitrary or an Abuse of Discretion.**

NACCAS is an accrediting agency recognized by the U.S. Department of Education ("Department"), most recently on March 10, 2016.  **Exhibit 2**. The Secretary of the Department ("Secretary") requires that NACCAS "demonstrate that the procedures it uses throughout the accrediting process satisfy due process."  34 C.F.R. § 602.25.  "The essential requirements of due process…are notice and an opportunity to respond.  The opportunity to present reasons, either in person or in writing, why proposed action should not be taken is a fundamental due process requirement." *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 532, 546, 105 S. Ct. 1487, 84 L. Ed. 2d 494 (1985).  The Secretary has determined that an accrediting agency "meets" the requirements of due process by following the criteria set forth in 34 C.F.R. § 602.25.

The courts have recognized "a common law duty [to employ fair procedures when making decisions affecting their members] exists", but that courts are not authorized "to undertake a wide-ranging review of decisionmaking by accreditation agencies." *Prof'l Massage Training Ctr. v. Accreditation Alliance of Career Sch. & Colls.*, 781 F.3d 161, 170 (4th Cir. 2015).  "[T]he court is authorized to consider 'only whether the decision of an accrediting agency…is arbitrary and unreasonable or an abuse of discretion and whether the decision is based on substantial evidence.'" *Prof'l Massage*, 781 F.3d at 171 (quoting *Thomas M. Cooley Law Sch. v. Am. Bar Ass'n*, 459 F.3d 705, 712 (6th Cir. 2006)).  "The Supreme Court has defined substantial evidence to be anything 'more than a mere scintilla' provided that a 'reasonable mind might accept [the evidence] as adequate to support a conclusion.'" *Prof'l Massage*, 781 F.3d at 174 (quoting *Almy v. Sebelius*, 679 F.3d 297, 301 (4th Cir. 2012) (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229, 59 S. Ct. 206, 83 L. Ed. 126 (1938))).

3

"When adjudicating common law due process claims against accrediting agencies, courts should focus primarily on whether the accrediting body's internal rules provided a fair and impartial procedure and whether it followed its rules in reaching its decision." *Prof'l Massage*, 781 F.3d at 172.  In determining whether an accrediting agency has satisfied due process with regard to an accreditation decision, "courts are 'not free to conduct a *de novo* review or to substitute their judgment for the professional judgment of the educators involved in the accreditation process.'" *Id.* at 171 (quoting *Wilfred Acad. of Hair & Beauty Culture v. S. Ass'n of Colls. & Schs.*, 957 F.2d 210, 214 (5th Cir. 1992)). Courts "do not undertake to 're-weigh conflicting evidence, make credibility determinations, or substitute [their] judgment' for that of the agency." *Prof'l Massage*, 781 F.3d at 174 (quoting *Craig v. Chater*, 76 F.3d 585, 589 (4th Cir. 1996)).  The court is confined to "the record that was considered by the accrediting agency at the time of the final decision." *Prof'l Massage*, 781 F.3d at 174-75.

A limited inquiry beyond the record may be justified regarding "the motivations of administrative decisionmakers in the case of 'a strong showing of bad faith or improper behavior.'" *Id.* at 177 (quoting *Citizens to Preserve Overton Park, Inc. v. Volpe*, 401 U.S. 402, 420, 91 S. Ct. 814, 28 L. Ed. 2d 136 (1971)).  This limited inquiry is because an "'impartial decisionmaker is an essential element of due process.'" *Prof'l Massage*, 781 F.3d at 177 (quoting *Morris v. City of Danville*, 744 F.2d 1041, 1044 (4th Cir. 1983) (quoting *Bowens v. N.C. Dept. of Human Res.*, 710 F.2d 1015, 1020 (4th Cir. 1983))).  However, this inquiry "must be measured against the 'presumption of honesty and integrity' ordinarily due to administrative decisionmakers." *See Sojourner-Douglass Coll. v. Middle States Ass'n of Colls. and Schs.*, ELH-15-01926, 2015 U.S. Dist. LEXIS 114288, at *94 (D.Md. Aug. 27, 2015) (quoting *Prof'l Massage*, 781 F.3d at 180).  An alleged conflict of interest must have an effect on the agency's

decision to establish that the agency acted arbitrarily and capriciously.  *See Id.*, at *112-13; *see also St. Andrews Presbyterian Coll. v. S. Ass'n of Colls. & Sch., Inc.*, 679 F. Supp. 2d 1320, 1333 (N.D. Ga. Sep. 30, 2009) (granting accrediting agency's motion for summary judgment after determining that "while there are conflicting claims whether [a member of the decisionmaking body] had a conflict of interest, [the school] has failed to show that the alleged conflict caused it any injury or otherwise affect [sic] the accreditation process").

1.    **NACCAS Determined WCBA's Section 8.18 Deadline Consistent with NACCAS' Policy and WCBA's Self-Reported, Self-Certified 2013 Annual Report.**

i.    **NACCAS' Policy, Practice, and Procedures**

NACCAS requires its accredited institutions to maintain a minimum graduation rate of 50%.  **Ex. 4:** Handbook at Standard I, Criterion 5.  Pursuant to the Secretary's criteria for recognition, NACCAS must

> (a)… (2) Require the institution or program to take appropriate action to bring itself into compliance with the agency's standards within a time period that must not exceed –
> > (i)    Twelve months, if the program, or the longest program offered by the institution is less than one year in length;
> > (ii)    Eighteen months, if the program, or the longest program offered by the institution, is at least one year, but less than two years, in length; or
> > (iii)    Two years, if the program, or the longest program offered by the institution, is at least two years in length.
> (b) If the institution or program does not bring itself into compliance within the specified period, the agency must take immediate adverse action unless the agency, for good cause, extends the period for achieving compliance.

34 C.F.R. § 602.20.

Section 8.18 of NACCAS' *Rules* mirrors the language in 34 C.F.R. § 602.20.  The Commission must determine and notify an institution that is out of compliance of the deadline by which it must return to compliance. **Ex. 4** at § 8.18(a) (NACCAS_001751).  That period,

"together with the time for the Commission's final decision, in no case shall exceed the following time limits:

> (1) Twelve months, if the institution's longest program is less than one year in length;
> (2) Eighteen months, if the institution's longest program is at least one year, but less than two years in length; or
> (3) Two years, if the institution's longest program is at least two years in length.

*Id.* at § 8.18(a) (NACCAS_001751).  "These time frames shall begin to toll on the date of the first official written notification by the Commission to the institution (which may include electronic notification) advising the institution that the Commission has determined that the institution is not in compliance with NACCAS' accreditation standards or requirements."  *Id.*

By the end of November each year, each institution is required to submit its annual report data for each program electronically through NACCAS' online portal.  *See* **Exs. 8-F** at Step 7 (NACCAS_000076-81); **8-S** at Step 7 (NACCAS_000746-62).  NACCAS provides step-by-step instructions for preparing, completing, and filing the annual report for that year.  **Ex. 1:** Decl. ¶ 13.  Step 3 of the Instructions explains how to prepare a cohort grid.  *See* **Exs. 8-F**, **8-S**.  Step 4 explains how to prepare an annual report worksheet from the data contained in the cohort grid. *Id*.  Step 7 explains how to input the data from the annual report worksheet into NACCAS' online portal in order to file the institution's annual report (data).  *Id*.  To answer Item 7 on the annual report worksheet, the institution must, for each program area, "indicate the length in calendar weeks of the longest NACCAS approved program (full-time or part-time) offered in [the year being reported] or [the year the report is being submitted], as published by [the] institution."  Specifically, the institution is instructed to

> [d]etermine the length (in calendar weeks) of the longest version of this program that you offered in [the year being reported] or [the year the report is being submitted], as published by your institution.  For example, if your institution offered a 50-week full-

> time cosmetology course and a 75-week part-time cosmetology course, then your institution would enter '75' in Item 7 of your cosmetology program's annual report worksheet (see following page). **It is critical that the length of your longest program is entered accurately. As a general rule, NACCAS does not allow modifications to 'Item 7' after the annual report has been submitted.**

**Exs. 8-F** at Step 4(9) (NACCAS_000070) (emphasis in original); **8-S** at Step 4(9) (NACCAS_000740) (emphasis in original) (replacing "general rule" with "rule" and "has been submitted" with "has passed").

The institution is required to submit a completed and signed Annual Report Certification. **Exs. 8-F** at Step 7(32) (NACCAS_000080); **8-S** at Step 7(32) (NACCAS 000750). The institution is also required to submit applicable attachments, including a chart of the institution's annual report data for each location and a copy of the institution's cohort grid. **Exs. 8-F** at Step 7(34) (NACCAS_000080); **8-S** at Step 7(34) (NACCAS_000751).

Once the required annual report information is submitted, "NACCAS will automatically send a summary of the annual report" to the email address the institution verified in the submission process. **Exs. 8-F** at Step 7(37); **8-S** at Step 7(37) (NACCAS_000751). If an institution reports a non-compliant rate, NACCAS will follow up, in November or December, with a formal letter placing the institution on monitoring. **Ex. 18** at Step 1 (NACCAS_003928). The formal notification letter is a template letter that identifies how NACCAS determines the institution's Section 8.18 deadline: "According to its most recent Annual Report, the longest program offered at this institution is the __-week ____ program." *See* **Exs. 7**, **9**, **8-C**.

In order to determine the maximum time for an institution to return to compliance under Section 8.18, NACCAS relies on the institution's self-reported, self-certified statement as to the length of its longest program (measured in weeks) submitted in its most recent annual report ("AR") preceding the notification of monitoring. **Ex. 6:** Tiezzi Dep. 37:6-9, 38:16-17, 127:17-

20.  NACCAS' internal procedures specify that "[a] school's longest program can be found in the institution's electronic annual report within CRM."  **Ex. 5** at ¶ 20 (NACCAS_003946).  The Procedures provides a screen shot of the CRM "Annual Report Summary" screen and a red circle around "Item 7 – Length of longest NACCAS approved program" to illustrate where to identify the longest program for Section 8.18 deadline purposes.  *Id.* (NACCAS_003947).  NACCAS does not consult, review, or consider the information included in an institution's applications, which are not maintained in NACCAS' CRM, for purposes of determining the appropriate Section 8.18 deadline.  **Ex. 6:** Tiezzi Dep. 13:9.

Institutions are informed in the AR instructions that if the institution discovers errors in its annual report, it must submit an Annual Report Change Form and provide supporting documentation.  **Exs. 8-F** at Step 7(42) (NACCAS_000081); **8-S** at Step 7(42) (NACCAS_000752). In the two years preceding WCBA's withdrawal, NACCAS' documentation produced in discovery reflects that upon receipt of a written request and supporting documentation, *see* **Exs. 10**, **13**, **14**, and **17**, NACCAS may update the length of the longest program offered by a school and thereby extend its Section 8.18 deadline, *see* **Exs. 11** and **15**, however, NACCAS doesn't have to, *see* **Ex. 17**.  School 2 submitted backup documentation as part of its low outcomes monitoring process, which included numerous enrollment agreements arguably evidencing a longer program than reported in School 2's 2012 AR.  **Ex. 14**.  However, School 2 submitted a written request to change its misreported longest program, thereby bringing its misreported longest program to NACCAS' attention.  **Ex. 13**.

## ii.    Application of NACCAS' Policy to WCBA's Process

NACCAS consistently followed its policy and practice in determining WCBA's Section 8.18 deadline for demonstrating compliance and enforcing the Section 8.18 deadline for WCBA as with every other institution.  On November 28, 2014, WCBA electronically submitted its 2013

8

AR data into NACCAS' portal, self-reporting and self-certifying a non-compliant graduation rate and that the length of the longest program it offered was 40-weeks. **Exs. 8-A**; **8-W**. Upon WCBA submitting its 2013 AR, NACCAS sent an automated email summary of that AR, informing WCBA that it was "not in compliance with NACCAS Standard I, Criterion 5." **Ex. 8-B**. NACCAS' November 28, 2014 email constitutes its first official written notification advising WCBA of its noncompliance, pursuant to Section 8.18(a).

*(a)* ***NACCAS Provided WCBA with Written Notice of WCBA's Section 8.18 Deadline.***

On December 12, 2014, NACCAS sent WCBA a letter, which was drafted from a template, informing WCBA that it was being placed on low outcomes monitoring for its 2013 non-compliant graduation rate and that it must bring itself into compliance within twelve months, by November 2015. **Ex. 8-C**. NACCAS informed WCBA how it arrived at a twelve month compliance period under Section 8.18 by stating "**[a]ccording to its most recent Annual Report**, the longest program offered at this institution is the 40-week cosmetology program." *Id.* (NACCAS_000032) (emphasis added). NACCAS also notified WCBA of its Section 8.18 deadline in its August 6, 2015 letter, **Ex. 8-K**, and September 25, 2015 letter, **Ex. 8-T**. WCBA did not attempt to correct the deadline after receiving any of the notifications from NACCAS. **Ex. 21:** Richardson Dep. 77:8-12, 113:1-15, 126:8-127:20.

*(b)* ***NACCAS Provided WCBA with Reasonable Time to Address Any Concerns About WCBA's Section 8.18 Deadline.***

Under the procedure and practice at the time of NACCAS' December 12, 2014 notification letter, NACCAS did not limit when an institution could file a written request to update misreported program length for Section 8.18 purposes. Despite the AR instructions and Section 8.18 setting out a clear procedure for correcting errors in AR submissions and requesting

9

extensions, respectively, WCBA **never** informed NACCAS that it had misreported the length of the longest program it offered in its 2013 AR prior to receiving the Commission's March 17, 2016 decision to withdraw the institution's accreditation. **Ex. 6:** Tiezzi Dep. 93:10-14, 98:4-8. Only **after** receiving the Commission's decision did WCBA inform NACCAS that it had misreported the length of the longest program in its 2013 AR. **Ex. 6:** Tiezzi Dep. 97:19-98:3; **Ex. 21:** Richardson Dep. 126:8-127:20. WCBA's new information was not before the Commission at the time WCBA's Section 8.18 deadline was determined in December 2014 or at any point before the issuance of the Commission's decision in March 2016.

### (c) NACCAS Treated WCBA Consistently with Regard to WCBA's Section 8.18 Period.

Based on NACCAS' records between February 25, 2014 and February 25, 2016, WCBA's assertion that NACCAS should have updated WCBA's misreported length of longest program offered in 2013 without WCBA's request is unsupported, and doing so would have resulted in NACCAS treating WCBA more favorably than other schools. Like WCBA, School 2 submitted backup documentation that contained enrollment agreements indicating that in the year School 2 misreported the length of its longest program, it actually offered a program longer than 52 weeks in length. **Ex. 14**. However, unlike WCBA, School 2 submitted a written request to NACCAS to update its program length. **Ex. 13**. There is no evidence that NACCAS did or would have updated School 2's longest program or Section 8.18 deadline without School 2's specific written request. And even if WCBA had submitted a written request, NACCAS would not necessarily have updated its 2013 AR. *See* **Ex. 17** (denying request to update length of program due to circumstances of the lack of compliance).

NACCAS followed its policy and procedure for notifying WCBA that it was out of compliance (November 28, 2014 automated email, **Ex. 8-B**); notifying WCBA that it was being

placed on low outcomes monitoring, its Section 8.18 deadline, and the basis for that deadline (December 12, 2014 letter, **Ex. 8-C**); reminding WCBA of its Section 8.18 deadline (August 6, 2015 letter, **Ex. 8-K**, and September 25, 2015 letter, **Ex. 8-T**), and relying on an institution to request and support requested changes to misreported longest program information as a way to bring such errors to NACCAS' attention.  Accordingly, NACCAS' process satisfies due process as it was "not arbitrary and unreasonable or an abuse of discretion" and was "based on substantial evidence."  *Prof'l Massage*, 781 F.3d at 171.

> **2.     NACCAS's Commission Determined that WCBA had Not Demonstrated Compliance with NACCAS' Graduation Outcome by WCBA's Section 8.18 Deadline Because WCBA Failed to Substantiate a Compliant Graduation Rate in Light of the Systemic Discrepancies in WCBA's Annual Report.**

> **i.     NACCAS' Annual Report and Monitoring Process**

NACCAS' policy and practice for annual report compliance and low outcomes monitoring are fair and impartial.  NACCAS satisfied its obligation to afford WCBA due process as set forth in 34 C.F.R. § 602.25 with regard to its Commission's decision.

NACCAS accredits approximately 1,300 institutions serving approximately 120,000 students in the cosmetology arts and sciences.  **Ex. 1:** Decl ¶¶ 2, 3.  Reviewing support for every student listed in every cohort grid for every accredited institution every November (when annual reports are due) is not feasible.  Therefore, NACCAS relies on institutions to provide annual report data that is (i) verifiable based on documentation and (ii) accurate because NACCAS does not require institutions to submit backup documentation in the regular course of filing annual reports.  *See* **Exs. 4** at Standard I, Criteria 3, 4 (NACCAS_001644); **8-F** at Step 1 (NACCAS_000059) and 2 (NACCAS_000060); **8-S** at Step 1 (NACCAS_000727) and 2 (NACCAS_000728).  "Standard 1, criteria 3, 4 and 5 are all part of compliance with the graduation requirements." **Ex. 6:** Tiezzi Dep. 156:15-19.

By November of each year, all accredited institutions must submit an accurate AR for the preceding year. **Ex. 4** at §§ 1.5(a)(5) (NACCAS_001693-94), 5.0(a) (NACCAS_001725). Each year, before September, NACCAS prepares and posts to its website step-by-step instructions for preparing, completing, and filing the AR. **Ex. 1:** Decl. ¶ 13; *see* **Exs. 8-F**, **8-S**.

The institution is instructed to fill out a cohort grid using the sample provided or a substantially similar grid. **Exs. 8-F** at Step 3 (NACCAS_000062-69); **8-S** at Step 3 (NACCAS_000731-39). A cohort grid is an aggregate of data used to calculate outcome rates for an institution's annual report for a given year. *See* **Exs. 8-F** at Step 3 (NACCAS_000062); **8-S** at Step 3 (NACCAS_000731). The cohort grid contains ten (10) columns, three of which are relevant to WCBA's process at issue in this lawsuit – (1) column #1 "Student Name", (2) column #3 "Date Scheduled to Graduate", and (3) column #4 "Actually Graduated Program? (Y/N?)".

According to NACCAS' Instructions, the students who should be listed in column #1 "Student Name" are all students "who were <u>scheduled to graduate</u> their program in [the year being reported]." **Exs. 8-F** at Step 3 (NACCAS_000062); **8-S** at Step 3 (NACCAS_000731). NACCAS' Instructions specifically identify those students as including (among others): "Students <u>scheduled</u> to graduate in [the year being reported] who <u>actually</u> graduated in [that year, or the previous or following years]" and "Students with amended contract end dates in [the year being reported]". **Exs. 8-F** at Step 3(1) (NACCAS_000062-63) (emphasis in original); **8-S** at Step 3(1) (NACCAS_000731-32) (emphasis in original). For each of these categories, NACCAS explains and/or gives an example. *Id.* NACCAS' Instructions also identify specific types of students who should not be listed in the annual report cohort grid. **Exs. 8-F** at Step 3(1) (NACCAS_000063-64); **8-S** at Step 3(1) (NACCAS_000732-33).

A student must be included in the cohort if his or her scheduled contract end date, adjusted for all amendments or addenda to his or her original enrollment agreement (such as a leave of absence), falls in the year being reported.  **Exs. 8-F** at Step 3(1) (NACCAS_000062); **8-S** at Step 3(1) (NACCAS_000732).  "[T]he scheduled graduation date comes from the contract signed at enrollment, and is adjusted for all contract addenda (e.g., leaves of absence, schedule changes, re-enrollments, etc.).  __**Accordingly, the scheduled graduation date on your cohort grid should always be a student's most recent contract end date.**__"  **Exs. 8-F** at Step 3(1) (NACCAS_000062) (emphasis in original); **8-S** at Step 3(1) (NACCAS_000731) (emphasis in original).   In cohort grid column #3, the institution should enter each student's scheduled graduation date.  **Exs. 8-F** at Step 3(2) (NACCAS_000064), **8-S** at Step 3(2) (NACCAS_000733).  Lack of 100% attendance, without a leave of absence addenda, does not adjust the student's scheduled graduation date.  *See* **Ex. 4 at** Policy IV.06 (NACCAS_001671).

Lack of 100% attendance does not mean, however, that the student has not graduated timely or cannot be counted toward an institution's compliance with NACCAS' graduation rate requirement.  Students who graduate by November 30th of the reporting year (i.e., up to eleven (11) months after the end of the year in which the student is scheduled to graduate) count as "actually graduated" for purposes of calculating an institution's compliance with NACCAS' graduation rate requirement.   *See* **Exs. 8-F** at Steps 3(4) (NACCAS_000064), 4(3) (NACCAS_000070); **8-S** at Steps 3(4) (NACCAS_000733), 4(3) (NACCAS_000740).

After completing the cohort grid, the institution is instructed to complete an annual report worksheet for each program.  Item 1 on the worksheet requests: "Number of students scheduled to graduate in [year being reported] (i.e., the total number of students listed on your annual report cohort grid)".  Step 4(3) of Instructions direct the institution to "[c]ount the number of students

listed on your annual report cohort grid". **Exs. 8-F** at Step 4(3) (NACCAS_000070); **8-S** at Step 4(3) (NACCAS_000740). Item 2 on the worksheet requests: "Number of students from Item 1 who actually graduated prior to November 30, [year following year being reported] (i.e., the total number of students marked with a 'Y' in column #4 of the annual report cohort grid)." Step 4(4) of the Instructions direct the institution to "[c]ount the number of students on your annual report cohort grid who are marked with a 'Y' in column #4." **Exs. 8-F** at Step 4(4) (NACCAS_000070); **8-S** at Step 4(4) (NACCAS_000740).

The data from the annual report worksheet(s) completed at Step 4 of the Instructions is inserted in the fields in the "Enrollment Related Information" section of the Programs Information Tab pop-up box in NACCAS' online portal. **Exs. 8-F** at Step 7(12) (NACCAS_000077); **8-S** at Step 7(12) (NACCAS_000747).

Institutions who are found to be out of compliance for outcomes are placed on low outcomes monitoring. NACCAS sends a letter to institutions that self-report a non-compliant outcome that informs the institution of its Section 8.18 compliance deadline, details its outcomes monitoring requirements, provides information about NACCAS' outcomes improvement workshop, and provides instructions for the preliminary annual report, including how to complete the cohort grid, gather backup documentation, and submit the report. **Ex. 7**; *see also* **Exs. 8-C**, **9**. "The burden of proof is on the institution to demonstrate compliance to NACCAS. The institution, in failing to submit its report accurately and in failing to compose a cohort grid that is composed in accordance with NACCAS' instructions, has failed to substantiate a compliant graduation rate to NACCAS." **Ex. 6:** Tiezzi Dep. 236:13-19.

During the required outcomes improvement workshop, institutions are provided information concerning NACCAS' 50% graduation threshold, the definition of graduation rate,

and how to calculate its graduation rate.  **Ex. 22** (WC 007537-41, 7547-57).  The slide for

"Common Annual Report Errors" identifies as an error, "Scheduled graduation date on cohort

grid must match the <u>most recent</u> contract end date shown in a student's file."  *Id.* (WC 007542).

In September of each year, NACCAS sends a letter to each institution on outcomes

monitoring with instructions for the annual report, including what backup documentation to

provide and how to provide it.  *E.g.,* **Ex. 8-T**.  The backup documentation is required to

substantiate an institution's rates.  **Ex. 6:** Tiezzi Dep. 147:22-148:2.  NACCAS reviews the

institution's backup documentation and, if necessary, informs the institution of any areas that it

needs to correct or clarify and provides a deadline by which the institution must provide its

response.  **Ex. 6:** Tiezzi Dep. 148:3-7.  Upon receipt of the response, NACCAS prepares a final

analysis, which it provides to the Commission.  *Id.*  The Commission's policy is that an

institution is permitted one opportunity to correct and clarify concerns that are present in its first

submission.  **Ex. 6:** Tiezzi Dep. 226:4-8, 14-20.  Institutions on low outcomes monitoring are

informed of the policy in all information request letters.  *Id.* 227:4-8.

A discrepancy between the cohort grid and backup documentation of

> 30 days is significant enough that it indicates that, you know, there
> are, the institution is definitely not doing things in accordance with
> NACCAS.  It's not putting its report together in accordance with
> NACCAS' requirements.  And if there's enough 30-plus day
> discrepancies, it indicates that, you know, maybe this student
> didn't have their cohort year changed, but the institution's clearly
> not doing it correctly.  Meaning recording the scheduled
> graduation dates on its cohort grid correctly, and that indicates that,
> you know, that additional errors may be present for students
> outside of the sample.

**Ex. 6:** Tiezzi Dep. 179:19-180:10.  The Commission bases its decision on compliance processes

"on the totality of the institution's process and everything that is in the record with respect to the

outcomes process prior to the commission's decision to withdraw accreditation."  *Id.* 167:6-14.

> **ii.    Application of NACCAS' Annual Report and Monitoring Policy to the Commission's Decision to Withdraw WCBA's Accreditation**
>
> > **(a)    *NACCAS met the criteria of 34 C.F.R. § 602.25(a) by providing WCBA with adequate written specification of its requirements.***

NACCCAS provided WCBA with adequate written specification of its requirements for preparing and submitting its 2014 AR, which were the same specifications as NACCAS provided to all other schools on outcomes monitoring.[1]   34 C.F.R. § 602.25(a).  On June 1, 2015, NACCAS published on its website the 2014 AR instructions.  **Ex. 8-S**.  On September 25, 2015, NACCAS sent a letter to WCBA reminding WCBA that "it is required to provide backup documentation in support of its electronic 2014 (data) Annual Report" and provided instructions for proper submission of backup documentation, **Ex. 8-T** (NACCAS_000756-58), tips for a successful submission, *Id.* (NACCAS_000759), and requirements for the organization of document submissions, *Id.* (NACCAS_000760-61).

Hengel Richardson, WCBA's owner, and Precious Howard and Portia Logan, WCBA's employees, attended NACCAS' March 8, 2015 outcomes monitoring workshop.  **Ex. 8-AA**.  Ms. Logan testified that she learned from the workshop that she needed "to refer more to those NACCAS annual report, reports from the NACCAS website, to lessen the errors or whatever." **Ex. 23:** Porter Dep. 64:10-17.

NACCAS also provided online resources, including webinars, to assist WCBA and other institutions in completing their AR while on outcomes monitoring.  **Ex. 8-T**.  WCBA's staff,

---

[1] WCBA did not raise in its appeal from the Commission's March 17, 2016 decision that the Commission's decision was arbitrary and capricious because WCBA asserted that it did not receive notice that in order to demonstrate compliance with Standard I, Criterion 5, it also had to be in compliance with Standard I, Criteria 3 and 4.  NACCAS' position is that WCBA waived this argument and it is not properly before this Court.  Notwithstanding NACCAS' objection, NACCAS did provide WCBA with notice of its requirements to satisfy due process as set forth in this Section.

including Portia Logan, completed annual report webinars. **Ex. 21:** Richardson Dep. 116:13-22; **Ex. 27:** Logan Dep. 74:15-75:5.

In addition to these specific writings and trainings regarding WCBA's 2014 AR submission, NACCAS provided WCBA with written specification of its requirements in its December 12, 2014 letter setting forth the instructions for gathering and preparing supporting documentation for a preliminary report, **Ex. 8-C**, its March 24, 2015 letter setting forth discrepancies and instructions for correcting them regarding support for WCBA's 2013 AR Change Form, **Ex. 8-G**, and its August 6, 2015 letter informing WCBA that its Change Form could not be processed because of the discrepancies in the scheduled graduation dates identified in the cohort grid and backup documentation and providing a list of resources for returning to compliance, **Ex. 8-K**. The discrepancies present in WCBA's 2013 Change Form and the reason why the Commission could not process WCBA's 2013 Change Form are very similar to the discrepancies present in WCBA's 2014 AR and the reason why the Commission withdrew WCBA's accreditation for failing to demonstrate compliance with NACCAS' Standards.

> (b) *NACCAS met the criteria of 34 C.F.R. § 602.25(b) by providing WCBA with a reasonable period of time to comply with requests for information and documents.*

WCBA submitted its electronic 2014 AR and backup documentation on November 24, 2015. **Exs. 8-I**, **M**. On December 12, 2014, NACCAS informed WCBA that it had twelve (12) months to come into compliance with NACCAS' Standards, a time period determined based on WCBA's self-reported, self-certified 2013 AR and Section 8.18 of NACCAS' *Rules*, which mirror the language in 34 C.F.R. § 602.20. For the reasons set forth in Section III(A)(1)(ii), *supra*, the period was reasonable.

NACCAS provided a reasonable period of time to respond to NACCAS' January 4, 2016 letter setting forth concerns with WCBA's November 24, 2015 submission of its 2014 AR. **Ex.**

**8-N**.  NACCAS informed WCBA that it must respond within 15 days from receipt of the letter.  *Id.*  Pursuant to Section 1.10 of NACCAS' *Rules*, WCBA requested an extension of 30 days to respond to NACCAS' request for additional information.  **Ex. 8-O**.  NACCAS granted WCBA an extension of 26 days, the most it could give so that WCBA's response could be reviewed and analyzed prior to the Commission's February 2016 meeting.  **Ex. 8-P**.

> **(c)**     **NACCAS met the criteria of 34 C.F.R. § 602.25(c) by providing WCBA with written specification of deficiencies.**

NACCAS provided WCBA with written specification of the deficiencies it identified in WCBA's 2014 AR submission.  34 C.F.R. § 602.25(c).  On January 4, 2016, NACCAS sent a letter to WCBA identifying areas in which NACCAS required additional information.  **Ex. 8-N**.  Consistent with its policy, NACCAS explained that it "allows all institutions one opportunity to correct and/or clarify any concerns which are present in their submission of low outcomes backup documentation."  *Id.* (NACCAS_000413).

NACCAS identified inaccuracies in WCBA's calculation of contract end dates following schedule changes and leaves of absence.  *Id.*  NACCAS provided examples of the discrepancies, identifying Students 10, 54, 70, 74, 42, and 6, and explained the impact of the significant issues with the accuracy of the students' scheduled graduation dates.  *Id.*  "If the scheduled graduation dates in the cohort grid are not accurate, then the institution is not calculating its graduation rate from the correct group of students."  *Id.* (NACCAS_000415).  NACCAS then instructed WCBA how to correctly identify the students' most recent contract end dates, how to correctly document revisions to contract end dates, and how to correctly prepare and submit the requisite backup documentation.  *Id.* (NACCAS_000415-17).  Finally, NACCAS informed WCBA, "Providing backup documentation for every student is <u>not</u> a requirement, but <u>is</u> permitted."  *Id.* (NACCAS_000415) (emphasis in original).

> **(d)** ***NACCAS met the criteria of 34 C.F.R. § 602.25(d) by providing WCBA with sufficient opportunity for a written response regarding deficiencies.***

NACCAS provided WCBA with sufficient opportunity for a written response regarding the deficiencies identified in NACCAS' January 4, 2016 letter before the Commission's next meeting. 34 C.F.R. § 602.25(d).

After reviewing NACCAS' January 4, 2016 letter, Ms. Logan "realized that NACCAS doesn't take account for people being absent" in calculating scheduled graduation dates. **Ex. 27:** Logan Dep. 65:18-66:8. In preparing the revised 2014 cohort grid and backup documentation, Ms. Logan consulted NACCAS' instructions as well as the January 4, 2016 letter. *Id.* 74:6-8, 81:12-16. Nevertheless, WCBA created its revised cohort grid from software that calculates the scheduled graduation date and includes absences from class due to not attending class, as opposed to formal leaves of absence. **Ex. 23:** Porter Dep. 23:5-6, 11-12; **Ex. 27:** Logan Dep. 66:9-67:11. Ms. Porter, on behalf of WCBA, testified that she understood from the January 4, 2016 letter that WCBA needed "to review the information for accuracy and confirm the graduation dates and cohort grid", **Ex. 23:** Porter Dep. 9:11-17, but "the concentration was on the back-up and not the cohort grid." *Id.* 59:6-10.

WCBA understood that it only had one opportunity to provide information to address issues in its 2014 AR. **Ex. 23:** Porter Dep. 43:14-17. WCBA understood that it could submit supporting documentation for all students in order to address NACCAS' concerns. **Ex. 23:** Porter Dep. 45:19:22. After granting WCBA a 26-day extension, on February 17, 2016, NACCAS received WCBA's 2014 (Revised) Annual Report Back-Up Documentation. **Ex. 8-Q** (NACCAS_000423-707).

>    **(e)    NACCAS met the criteria of 34 C.F.R. § 602.25(e) by notifying WCBA in writing of the Commission's Adverse Action.**

NACCAS notified WCBA in writing of the Commission's action to withdraw WCBA's accreditation and described the basis for the action. 34 C.F.R. § 602.25(e). All Commissioners present at the February 2016 Commission meeting, with the exception of Chairman Bouman, voted in favor of withdrawing WCBA's accreditation. **Ex. 31:** Comm'n Mins. (NACCAS_006286-91). Chairman Bouman only votes when a tie needs to be broken, but there were no Commissioners opposed to Commissioner Smith's motion to withdraw WCBA's accreditation. **Exs. 6:** Tiezzi Dep. 212:13-15; **20:** Mirando Dep. 139:13; **31**.

On March 17, 2016, NACCAS sent WCBA a letter informing WCBA of the Commission's action to withdraw WCBA's accreditation and the basis for its decision. **Ex. 8-R**. The Commission considered the significant discrepancies in the calculated contract end dates identified in WCBA's cohort grid and the backup documentation, including that three of the students, Students 48, 50, and 54, appeared to have been removed from the 2014 cohort though it appeared that they should be part of the cohort based on the backup documentation submitted. **Ex. 8-R** (NACCAS_000712). NACCAS explained the import of these discrepancies as follows:

>    As the 2014 cohort is based upon students with scheduled graduation dates in 2014, accurate scheduled graduation dates are critical for ensuring the cohort contains the correct students. Based on the errors present in the sample, it is possible that additional students in the 2014 cohort outside of the sample would need to be removed from the cohort as a result of inaccurate scheduled graduation dates, as it is also possible that additional students from the 2013 and 2015 cohorts would need to be included.

*Id.* NACCAS therefore could not calculate a 2014 graduation rate or confirm WCBA's representation that it had a compliant graduation rate because NACCAS could not verify how many students and which students were appropriately part of the 2014 cohort.

The Commission determined: (1) "As a result of these inaccuracies in the institution's graduation rate, **the Commission determined that the institution was out of compliance with NACCAS' Standard I, Criterion 3**, which requires that the annual report data submitted to NACCAS be accurate."  (2) "As the institution's annual report (and its cohort grid, which is part of the institution's supporting documentation) was found to be inaccurate, **the Commission determined that the institution was also out of compliance with NACCAS' Standard I, Criterion 4**, which requires that the institution maintain 'documentation *that can be verified* [emphasis added]' in support of its annual report."  (3) "As the institution's 2014 Annual Report was found to be inaccurate, **the Commission determined that the institution has failed to demonstrate compliance with NACCAS' outcome requirements as described in Standard I, Criterion 5 within the timeframes specified by Section 8.18 of NACCAS'** *Rules*."  *Id.* (emphasis in original).

> (f)     *NACCAS treated WCBA consistently with regard to its analysis of WCBA's 2014 AR and 2014 revised AR submission.*

NACCAS provided WCBA the same notification of NACCAS' requirements for annual report submission while on outcomes monitoring and notification of deficiencies and opportunity to correct as other institutions on low outcomes monitoring.  NACCAS requires that backup documentation substantiate the cohort grid because normally an institution does not submit backup documentation with its annual report and NACCAS relies on the institution's certification that it is reporting its outcomes data correctly.

WCBA's position is that NACCAS should calculate $45 / x = 62\%$ (2014 AR) or $35 / x = 56\%$ (2014 revised AR) without $x$ being a verifiable number.  Alternatively, WCBA's position can be understood as requiring that NACCAS simply accept WCBA's calculation even though it is not verifiable.  WCBA's position that NACCAS could and should accept an unverifiable

graduation rate is nonsensical, contrary to the explicit instructions NACCAS provided to WCBA in correspondence dated December 12, 2014, March 24, 2015, August 6, 2015, September 25, 2015, and January 4, 2016 and NACCAS' low outcomes monitoring workshop that WCBA attended on March 8, 2015, contrary to the standards NACCAS applies to all other schools; and would strip low outcomes monitoring of any meaning and purpose.  WCBA's position would also have the clearly erroneous result of an institution being able to make up data for its cohort grid in order to have a "compliant" annual report while its backup documentation, which isn't normally submitted to NACCAS, "accurately" shows that the institution is not compliant.

### 3.   NACCAS's Appeal Review Panel Affirmed the Commission's Decision because It Unanimously Determined that the Commission's Decision was Supported by Substantial Evidence.

#### i.   NACCAS' Appeal Process

Section 9 of NACCAS' *Rules* governs the appeal process from a Commission action.  **Ex. 6:** Tiezzi Dep. 98:19-99:1; **Ex. 4** at § 9.1(a) (NACCAS_001754).   The institution bears the burden of establishing that the Commission's "decision was clearly erroneous, not supported by the evidence on the record at the time the Commission took action, or was otherwise arbitrary and capricious."  *Id.* at § 9.2(a).  The Panel is prohibited from considering evidence not in the record at the time of the Commission's decision and may only consider the record on appeal, which is defined in Section 9.2(d).  *Id.* at § 9.2(b); *see also id.* at § 9.4(c) (prohibition extends to evidence of remediation).  The Panel is prohibited from substituting its judgment for that of the Commission.  *Id.* at § 9.2(c).

An institution must, within 20 days after receiving notice of the Adverse Action, submit a letter of intent to appeal and appeal fee.  *Id.* at § 9.3 (NACCAS_001755).  An institution is required to submit an Appeal Document setting out the arguments which the institution believes support its claim, addressing each basis for the Adverse Action stated by the Commission in its

notification letter, and supporting its argument with reference to documentation in the record at the time the Commission made the Adverse Action.  *Id.* at § 9.4(a)-(b).

"No sitting Commissioner may serve on an Appeal Review Panel, nor may any former Commissioner serve on an Appeal Review Panel until at least one (1) year after his or her term as Commissioner has ended."  *Id.* at § 9.13(b) (NACCAS_001759).  Both the institution and NACCAS may have counsel for the appeal proceedings. *Id.* at § 9.6(f) (NACCAS_001758-59).

> ### ii.     NACCAS' Appeal Process Applied to the Panel's Decision to Affirm the Commission's Decision
>
> > *(a)     **NACCAS met the criteria of 34 C.F.R.  § 602.25(f) by providing WCBA with an opportunity to appeal the Commission's Adverse Action.***

NACCAS provided WCBA with the opportunity, upon written request, to appeal the Commission's decision before the withdrawal of accreditation became final.   34 C.F.R. § 602.25(f).  On April 5, 2016, NACCAS received WCBA's letter dated April 1, 2016 indicating its intent to appeal the Commission's withdrawal of accreditation.  **Ex. 32**.  On April 7, 2016, NACCAS sent a letter to WCBA acknowledging receipt of its letter dated April 1, 2016 and explaining the requirements for submission of the "Appeal Document", right to object to members of the Panel on grounds that the panelist has a conflict of interest, and that NACCAS would inform WCBA of the date of the Panel hearing.  **Ex. 33**.

> > *(b)     **NACCAS met the criteria of 34 C.F.R.  § 602.25(f)(1)(i) and (ii) by constituting a Panel that did not include members from the Commission and subjecting the Panel members to a conflict of interest policy.***

NACCAS' Panel, which did not include any members of the Commission making the decision to withdraw WCBA's accreditation, was subject to a conflict of interest policy.  **Ex. 1: Decl. ¶ 19.**  *Id.* § 602.25(f)(1)(i) and (ii).  In its April 7, 2016, NACCAS informed WCBA that it could access the identity of the Panelists via NACCAS' website and advised WCBA of its right

to object to a Panelist on the basis of NACCAS' conflict of interest policy, which was attached to the letter.  **Ex. 33**.

          *(c)*       ***NACCAS met the criteria of 34 C.F.R. § 602.25(f)(2) by recognizing WCBA's right to counsel.***

WCBA was represented by counsel on appeal.  34 C.F.R. § 602.25(f)(2).  On April 25, 2016, NACCAS sent a letter to WCBA reminding WCBA of the deadline for submission of WCBA's Appeal Document.  **Ex. 34**.  On May 2, 2016, WCBA submitted its Appeal Document, which included WCBA's written bases for appeal and support for its arguments.  **Ex. 8-U**.

WCBA asserted three bases for appeal: (1) WCBA was denied the benefit of the cure period provided under NACCAS' *Rules*, (2) NACCAS' conclusion that WCBA's 2014 AR was unverifiable was erroneous and arbitrary and capricious, and (3) WCBA demonstrably met NACCAS' outcomes requirements.  *Id.* (NACCAS_000763-67).  WCBA submitted support comprising (1) WCBA's Certificate of Accreditation and Renewal of Accreditation Letter, *Id.* (NACCAS_000768-70), (2) NACCAS' December 12, 2014 Letter to WCBA, *Id.* (NACCAS_000771-79), (3) WCBA's Notes to File from its February 17, 2016 submission, *Id.* (NACCAS_000780-91), (4) WCBA's **new** 2014 outcomes backup documentation for every student in WCBA's 2014 cohort grid, *Id.* (NACCAS_000792-1552), and (5) WCBA's **new** Notes to File regarding Students 54 and 53 and "updated" backup documents for each, *Id.* (NACCAS_001553-71).

On May 5, 2016, NACCAS sent WCBA a letter informing WCBA of the date and time of its appeal hearing.  **Ex. 35**.  On June 22, 2016, the Panel heard argument by WCBA's counsel, which was transcribed.  **Ex. 8-V**.

    *(d)*  ***NACCAS met the criteria of 34 C.F.R. § 602.25(f)(1)(iii)
and (iv) by constituting a Panel that has and did exercise
authority to decide WCBA's appeal.***

  The Panel constituted to review WCBA's appeal had authority and did exercise such authority to decide WCBA's appeal.  On June 22, 2016, after written submission and a hearing, the Panel unanimously decided to deny WCBA's appeal.  **Ex. 37:** Panel Mins. (NACCAS_006948-83).

  First, the Panel decided that the Commission did not err in providing WCBA with a 12-month remediation period because (1) Rule 8.18 only sets forth the <u>maximum</u> time for a school to demonstrate compliance and (2) WCBA's 12-month compliance deadline was derived from WCBA's self-reported, self-certified length of the longest program offered in its 2013 AR.  *Id.* (NACCAS_006955-59).

  Second, the Panel decided that the Commission did not err in concluding that WCBA's 2014 graduation rate was unverifiable because

> in light of the errors and discrepancies in the calculation of contract end dates and the composition of the school's 2014 student cohort evident in the school's 2014 Supplemental Response, and of school's established history… of failures to correctly identify its student cohort and to properly calculate contract end dates, the school had failed to demonstrate that its 2014 Annual Report (in particular, its identification of its 2014 student cohort) was accurate or verifiable as a consequence of which the school's 2014 graduation rate could not be verified (because the Commission could not verify that any of the school's student outcome rates was being calculated from the aggregated data of the correct group of students).

*Id.* (NACCAS_006965-70).   The Panel noted that the errors and discrepancies present in WCBA's 2014 AR and revised submission were similar to the material discrepancies identified in WCBA's 2013 AR change request and supplemental submission.  *Id.* (NACCAS_006968).

The Panel could not accept (or even consider) WCBA's Exhibit 4 submission because it was not evidence before the Commission and therefore constituted impermissible new evidence of compliance prohibited by Section 9.4 of NACCAS' *Rules*.  *Id.* (NACCAS_006972-74).

> *(e)*     ***NACCAS met the criteria of 34 C.F.R. § 602.25(g) by notifying WCBA of the result of WCBA's appeal and the basis for that result.***

NACCAS notified WCBA in writing of the result of WCBA's appeal and the basis for the result.  34 C.F.R. § 602.25(g).  On October 13, 2016, NACCAS sent a letter to WCBA informing WCBA of the Panel's decision.  **Ex. 8** (NACCAS_000001-001627).[2]  NACCAS' 28-page letter included the analysis and conclusions set forth in the Panel's minutes.  Included in NACCAS' letter was the record considered by the Panel.

### 4.     Chairman Bouman was Not Required to Recuse Himself.

### i.     NACCAS' Code of Ethics

NACCAS is required by the Department to maintain conflict of interest policies.  *See* 34 C.F.R. § 602.15(a)(6)(ii).  NACCAS abides by the conflict of interest policies set forth in its Code of Ethics.  **Ex. 19** at ¶ 3 (NACCAS_006852).  The policy sets forth the definition of a conflict of interest and under which circumstances a Commissioner or Panelist must disavow from discussion and voting on school accreditation actions.  *Id.*

On March 10, 2016, after determining that NACCAS met the requirements of the Department's criteria (including, specifically, 34 C.F.R. § 602.15(a)(6)(ii), the Department renewed NACCAS' recognition as an accrediting agency.  **Ex. 2**.  The Department thereby affirmed that NACCAS does meet the Department's requirements, including with respect to the

---

[2] NACCAS did not send WCBA Exhibit U, which was WCBA's Appeal Document, because it was 810 pages and presumably WCBA had a copy of its appeal submission.  The letter and remaining exhibits amounted to approximately 817 pages.

Department's requirements governing accreditor conflict of interest policies.  *See* 34 C.F.R. §§ 602.36(e)(1)(i).

### ii.      NACCAS' Code of Ethics as Applied to Chairman Bouman

Chairman Bouman did not have a conflict of interest, but, even if he did, the alleged conflict of interest did not have any effect on NACCAS' Commission's decision to render it arbitrary and capricious.  An alleged conflict of interest must have an effect on the agency's decision to establish that the agency acted arbitrarily and capriciously.  *Sojourner-Douglass Coll. v. Middle States Ass'n of Colls. and Schs.*, ELH-15-01926, 2015 U.S. Dist. LEXIS 114288, at *112-13 (D.Md. Aug. 27, 2015) (quoting *Prof'l Massage*, 781 F.3d at 180); *see also St. Andrews Presbyterian Coll.*, 679 F. Supp. 2d at 1333 (granting accrediting agency's motion for summary judgment after determining that the school failed to establish that the alleged conflict of interest affected the accreditation process.  There is no assertion that Chairman Bouman presented a conflict of interest as to the Panel's decision.

As set forth in Section III(A)(1)-(2), *supra*, the Commission's decision to withdraw WCBA's accreditation was supported by substantial evidence that WCBA's graduation rate could not be calculated because the cohort was not verifiable or accurate.  Even if Chairman Bouman had a conflict of interest, there is no evidence that it affected the Commission's decision.  Further, the Panel, an independent seven (7) member body, came to the same conclusion as the Commission after reviewing the record at the time of the Commission's decision.  NACCAS' procedure satisfies due process.

On its website and in its handbook, NACCAS lists each member of the Board of Commissioners and for each Commissioner, his or her qualification as Commissioner, employer, and contact information.  **Ex. 4**.  WCBA did not inform NACCAS that any Commissioner, including Chairman Bouman, had a conflict of interest or a potential conflict of interest prior to

the Commission's February 2016 decision to withdraw WCBA's accreditation, after explicitly being made aware of NACCAS' conflict of interest policy prior to WCBA's appeal, or the Panel's June 2016 affirmation of the Commission's decision.

During the relevant time period, Chairman Bouman was a resident of Montana and his employer, EEG, had headquarters in Pottsville, PA. **Exs. 38**; **1:** Decl ¶ 24. Pursuant to NACCAS' conflict of interest policy, **Ex. 19**, Chairman Bouman was required to recuse himself from discussion and voting on schools located in Montana and Pennsylvania and anything regarding an EEG school. WCBA is not in Montana or Pennsylvania, and is, obviously, not an EEG school. Under NACCAS' conflict of interest policy, Chairman Bouman was not required to recuse himself from consideration of schools not in Montana or Pennsylvania, or owned by EEG even if he had an ownership interest in EEG, unless Chairman Bouman believed he had a conflict of interest with respect to any such school. *See* **Ex. 19**. He did not. There is no evidence that supports a "strong showing of bad faith or improper behavior." *Prof'l Massage*, 781 F.3d at 177.

The Chair of the Board of Commissioners only votes on school processes when a tie must be broken. **Ex. 6:** Tiezzi Dep. 212:13-15. According to the February 2016 Board of Commissioners meeting minutes, Commissioner Smith made the motion and all Commissioners present at the meeting decided to withdraw accreditation without any opposition votes. **Ex. 31**. Therefore Chairman Bouman did not vote on WCBA's withdrawal.

  **B.**   **Summary Judgment on Count II Should be Entered in NACCAS' Favor because No Evidence Supports WCBA's Claims for Injunctive Relief or Declaratory Relief.**

A plaintiff must establish actual success on the merits to succeed on a permanent injunction claim. *Amoco Prod. Co. v. Vill. of Gambell, AK*, 480 U.S. 531, 546 n.12, 107 S. Ct. 1396, 94 L. Ed. 2d 542 (1987). A plaintiff must establish: "(1) that it has suffered an irreparable

injury; (2) that remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) that, considering the balance of hardships between the plaintiff and defendant, a remedy in equity is warranted; and (4) that the public interest would not be disserved by a permanent injunction." *Christopher Phelps & Assocs., LLC v. Galloway*, 492 F.3d 532, 543 (4th Cir. 2007) (quoting *eBay Inc. v. MercExchange, L.L.C.*, 547 U.S. 388, 126 S. Ct. 1837, 1839, 164 L. Ed. 2d 641 (2006)). "In a case of actual controversy within its jurisdiction…any court of the United States…may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a).

### 1. WCBA Cannot Establish Actual Success on the Merits.

NACCAS incorporates as though set forth herein Section III(A), *supra*. For the foregoing reasons, WCBA cannot establish actual success on the merits.

### 2. WCBA Cannot Establish "That Remedies Available at Law, Such as Monetary Damages, are Inadequate to Compensate for That Injury" in Light of Its Expert's Valuation and Lost Profits Opinions.

WCBA has asserted that it is entitled to damages. *See* **Ex. 39**. WCBA has identified a measure of damages in the event WCBA ceases to exist, in the form of a valuation of the business amounting to $1,011,320. *Id.* It has also identified a measure of damages in the event WCBA continues to exist, in the form of lost profits amounting to $975,205.00. *Id.*

WCBA has not asserted that those amounts are inadequate to compensate for its alleged injury. In fact, in light of WCBA's most recent profits and losses, WCBA's expert opinions of damages more than adequately compensates WCBA. In 2013, WCBA reported a profit of $38,475. **Ex. 40** at Dkt. 51-5 p.13. In 2014, WCBA reported a profit of $31,668. *Id.* In 2015, WCBA reported a <u>loss</u> of $2,402. *Id.*

     **3.**     **WCBA Cannot Establish that the Balance of Hardships Weigh in Its Favor.**

WCBA asserts that its loss of accreditation is a hardship for its students who will not be able to continue their education.  Dkt. 28 ¶ 44.  However, Mr. Richardson testified that some of WCBA's former students had transferred to other schools and are, therefore, not harmed by WCBA's loss of accreditation.  **Ex. 21:** Richardson Dep. 133:23-134:12, 164:1-14.

     **4.**     **WCBA Cannot Establish that the Public Interest would Not be Disserved by a Permanent Injunction.**

NACCAS' Standards require institutions to provide applicants written information that accurately reflects the institutions most recent annual report year statistics prior to the applicant's enrollment.  **Ex. 4** at Standard IV, Criterion 5 (NACCAS_001647).  Allowing WCBA to report inaccurate and unverifiable outcomes is a disservice to the public who likely considers that information in making their enrollment decisions. A permanent injunction also undermines the process of accreditation under the authority of 20 U.S.C. § 1099b, 34 C.F.R. Part 602 and divests the educators involved in the accreditation process of their authority, which is based on their professional experience and judgment.

## IV.    <u>CONCLUSION</u>

For the foregoing reasons, NACCAS respectfully requests that this Court grant its motion for summary judgment and dismiss WCBA's amended complaint with prejudice.


Dated: August 4, 2017                 Respectfully Submitted,

                                    <u>/s/Julia K. Whitelock</u>
                                    O'Kelly E. McWilliams, III, Esq., VSB #36137
                                    Julia K. Whitelock, Esq., VSB #79328
                                    GORDON REES SCULLY MANSUKHANI, LLP
                                    1300 I Street, NW, Suite 825
                                    Washington, DC 20005
                                    T: 202.399.1009
                                    F: 202.800.2999

omcwilliams@grsm.com
jwhitelock@grsm.com

## CERTIFICATE OF SERVICE

I certify that on this 4th day of August, 2017, I electronically filed the forgoing with the Clerk of Court using the CM/ECF system, which will then send notification of such filing to the following CM/ECF participants:

William A. Lascara, Esq., VSB # 23188
Jesse B. Gordon, Esq., VSB # 68187
Pender & Coward, P.C.
222 Central Park Avenue, Suite 400
Virginia Beach, Virginia 23462
T: 757.490.6253
F: 757.497.1914
wlascara@pendercoward.com
jgordon@pendercoward.com


        /s/ Julia K. Whitelock
Julia K. Whitelock, Esq.