UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF VIRGINIA
Norfolk Division

WARDS CORNER BEAUTY ACADEMY,

        Plaintiff,

v.                          Civil No. 2:16cv639

NATIONAL ACCREDITING COMMISSION
OF CAREER ARTS & SCIENCES,

        Defendant.

## OPINION AND ORDER

This matter is before the Court on cross-motions for summary judgment associated with Defendant's ("NACCAS") withdrawal of Plaintiff's ("Wards Corner") accreditation as a barbering and cosmetology academy. ECF Nos. 63, 70. In light of the limited judicial review legally permissible in an accreditation action, Prof'l Massage Training Ctr., Inc. v. Accreditation All. of Career Sch. & Colleges, 781 F.3d 161 (4th Cir. 2015), and the record before the Court, the Court issued an Order on October 20, 2017, concluding that the only issue in this case that was subject to a "trial or other evidentiary proceeding" is Plaintiff's claim that Defendant's accreditation withdrawal decision was not made by an "impartial decisionmaker." ECF No. 113, at 4-5. All other issues, which must be decided based only on the record, were taken under advisement. Id. As to the bias issue, the Court requested

additional briefing on whether Plaintiff had a right to a <u>jury</u> <u>trial</u> and raised questions as to the proper remedy should Plaintiff succeed at the conclusion of the trial on bias. <u>Id.</u> at 7-8.

The Court has now received supplemental briefs from both parties, ECF Nos. 123, 125, and has conducted extensive research on the issues of remedies and jury trial rights in the accreditation context. Having considered Plaintiff's contention that the Court should conduct a full damages trial, with a jury as factfinder, as well as Defendant's legal opposition to such request, the Court has determined that the scope and form of the trial is best interpreted and explained after first resolving the previously reserved summary judgment issues. Accordingly, set forth below are the Court's rulings as to: (A) the cross-motions for summary judgment on all issues other than bias; (B) whether money damages are an available remedy in this case if Plaintiff demonstrates at trial that it was denied the right to an impartial decisionmaker; and (C) whether Plaintiff is entitled to a jury trial on the issue of bias.

## A. Cross Motions for Summary Judgment

### 1. Summary of Issues

Excluding the issue of bias, the parties' dispute on summary judgment centers on whether Plaintiff: (1) received the correct remediation period to demonstrate that its graduation

rate was compliant with NACCAS requirements; (2) received adequate notice regarding its alleged failure to maintain accurate internal records; and/or (3) received a full and fair opportunity to pursue an administrative appeal of the withdrawal decision. As to the second point, Plaintiff argues that Defendant did not withdraw Plaintiff's accreditation due to an actual graduation rate deficiency, but rather, improperly withdrew accreditation based on Plaintiff's failure to maintain accurate records without notifying Plaintiff in advance that accreditation could be withdrawn on such basis.

## 2. Standard of Review

### a. Summary Judgment Standard

The Federal Rules of Civil Procedure provide that a district court shall grant summary judgment in favor of a movant if such party "shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).[1] "[T]he mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the

---

[1] The Court incorporates herein its prior discussion of the summary judgment standard, as applied in analogous Administrative Procedures Act cases. See October 20, 2017 Memorandum Order, ECF No. 113, at 2 (explaining that when reviewing an agency action, ordinarily, a district court's role is similar to an appellate tribunal) (citing Rempfer v. Sharfstein, 583 F.3d 860, 865 (D.C. Cir. 2009); Haley v. Under Sec'y of Commerce for Intellectual Prop., 129 F. Supp. 3d 377, 381 (E.D. Va. 2015)).

3

requirement is that there be no genuine issue of material fact." Anderson v. Liberty Lobby Inc., 477 U.S. 242, 247-48 (1986).

When confronted with cross-motions for summary judgment, "the court must review each motion separately on its own merits to determine whether either of the parties deserves judgment as a matter of law." Rossignol v. Voorhaar, 316 F.3d 516, 523 (4th Cir. 2003) (internal quotation marks and citation omitted). As to each motion, the Court must resolve factual disputes and competing rational inferences in favor of the non-movant. Id.

### b. Accreditation Review Standard

As acknowledged by both parties, the Fourth Circuit's recent opinion in Prof'l Massage provides the standard governing this Court's review of NACCAS's decision to withdraw Wards Corner's accreditation. As explained by the Fourth Circuit, while accreditation agencies are not state actors, and are therefore "not subject to the strictures of constitutional due process requirements," because such agencies are "quasi-public" and "wield enormous power over institutions—life and death power, some might say," they owe a "common law duty . . . to employ fair procedures when making decisions affecting their members." Prof'l Massage, 781 F.3d at 169-70 (citations omitted). Distilled to the simplest terms, the common law duty applicable to accreditation agencies requires decisionmakers "to play it straight." Id. at 170.

4

In addition to establishing the legal duty owed by accreditation agencies, Prof'l Massage defines the scope of the Court's inquiry and the degree of judicial deference owed to an accreditation decision. Importantly, "recognition that . . . a common law duty exists does not authorize courts to undertake a wide-ranging review of decisionmaking by accreditation agencies." Id. Rather, the proper scope of the fairness review authorizes reviewing courts "to consider only whether the decision of an accrediting agency such as [NACCAS] is arbitrary and unreasonable or an abuse of discretion and whether the decision is based on substantial evidence." Id. at 171 (citations omitted). A district court is therefore prohibited from substituting its judgment for that of the accrediting agency and may not "conduct a de novo review." Id. (citations omitted).

When performing this deferential review, a district court should generally confine itself "to the record that was considered by the accrediting agency at the time of the final decision." Id. at 174-75. In the absence of a strong showing of bad faith or improper behavior, the Fourth Circuit has cautioned district judges not to extend the judicial review beyond the "procedural fairness" of the accreditation process.[2]

_____

[2] As noted in this Court's prior rulings in this case, the Fourth Circuit has acknowledged that "an impartial decisionmaker is an essential element of due process" regardless of whether the claim before court is "a common

5

See id. at 172 ("When adjudicating common law due process claims against accreditation agencies, courts should focus primarily on whether the accrediting body's internal rules provided a fair and impartial procedure and whether it followed its rules in reaching its decision.") (internal quotation marks and citation omitted).

### 3. Summary Judgement Analysis

#### a. Factual Summary

With the exception of the bias/pecuniary interest issue, the parties are largely in agreement as to the relevant facts, which are established by the record before NACCAS at the time of its withdrawal decision. This Court incorporates herein the "undisputed facts" set forth in the agreed final pretrial order entered in this case. ECF No. 131, at 1-7. In short, the instant case arises out of Defendant's withdrawal of Plaintiff's accreditation as a cosmetology and barbering academy. On November 28, 2014, Wards Corner submitted its 2013 Annual Report to NACCAS, self-reporting that its graduation rate was below the required threshold of 50%, and further indicating that the length of the longest program taught by Wards Corner was 40

---

law due process claim . . . [or] a constitutional one." Prof'l Massage, 781 F.3d at 177. Therefore, in limited circumstances, a district court "may be justified in conducting a more searching inquiry into the motivations of administrative decisionmakers." Id. When performing such inquiry, "[a]n administrative decisionmaker is entitled to a presumption of honesty and integrity"; however, such presumption can be overcome through evidence establishing that a decisionmaker had a pecuniary interest in the outcome. Id. at 178.

weeks in length. ECF No. 72-2. In late November and early December of 2014, Plaintiff received an email from NACCAS, followed by a letter, indicating that Wards Corner did not meet the required graduation rate, and that based on Plaintiff's report that its longest program was 40 weeks in length, Plaintiff had twelve months to rectify the deficiency. ECF Nos. 72-3, 72-4. Around the same time, Plaintiff requested that Defendant provide it with information on the process and requirements for correcting Wards Corner's 2013 graduation rate, and Defendant responded with an email that same day outlining the process. ECF No 72-5. NACCAS also provided Plaintiff with written notice of the steps necessary to achieve compliance through demonstrating a successful 2014 graduation rate, to include submitting a "Preliminary 2014 Annual Report" by April 15, 2015. ECF No. 72-4.

The record documents that, during 2015, Plaintiff attempted, but according to Defendant failed, to effectively revise its reported 2013 graduation rate to reflect that it was actually in compliance. ECF Nos. 72-8, 73-2. Defendant, however, again encouraged Plaintiff to submit preliminary 2014 numbers and even extended the deadline for doing so. ECF No. 72-9. Notwithstanding such extension, Plaintiff failed to submit such data to NACCAS. ECF No. 73-1. Moreover, when the 2014 annual report was submitted by Plaintiff in the fall of

7

2015, and NACCAS determined that it failed to demonstrate a compliant 2014 graduate rate, NACCAS allowed Plaintiff additional time to submit supplemental information,[3] further notifying Plaintiff, in boldface text, that it had one, and only one, opportunity to submit a supplement seeking to correct the identified deficiencies. ECF No. 76-1.

After receiving a supplement from Plaintiff in February of 2016, NACCAS made the decision to withdraw accreditation, later affirming such decision after a full appeals process. ECF Nos. 64-3, 72-1. Wards Corner's accreditation was withdrawn after NACCAS determined that Wards Corner failed to submit accurate annual report data, failed to maintain internal documentation that can be verified in support of its annual report, and failed to demonstrate compliance with the minimum graduation rate within the timeframes established by NACCAS. ECF Nos. 64-5, at 5; 77-1, at 6.

### b. Discussion

Under the deferential Prof'l Massage standard, Plaintiff can succeed only by proving that the record from the accreditation review process demonstrates that NACCAS's decision

---

[3] The letter allowing the supplement is dated January 4, 2016, with the date of such letter demonstrating that Defendant did not strictly enforce the 12 month remediation period that began in late November or early December of 2014, but rather, provided Wards Corner an additional "notice" and an additional "opportunity to be heard" before the withdrawal decision was made. Moreover, at Wards Corner request, NACCAS subsequently allowed Wards Corner a "26 day" extension to submit its supplement. ECF No. 76-3.

to withdraw accreditation was "arbitrary and unreasonable or an abuse of discretion," or was not "based on substantial evidence"; when analyzing Plaintiff's arguments, this Court is expressly prohibited from substituting its judgment for that of NACCAS. Prof'l Massage, 781 F.3d at 171 (citation omitted). Applying such deferential standard in this case, for the reasons stated in Defendant's summary judgment filings, the Court finds that the notice period,[4] the reason for withdrawal,[5] and the

---

[4] During the one-year remediation period, which Defendant ultimately extended beyond one-year, Plaintiff never communicated its concern to Defendant that because Plaintiff's institution offered a curriculum that was longer than one year, it "should" have received 18 months, rather than 12 months, to demonstrate a compliant graduation rate. Moreover, in light of the fact that Wards Corner utilized its one opportunity to provide supplemental information documenting long past events (i.e., its 2014 graduation rate), it is questionable that being afforded additional time would have benefited Wards Corner; rather, it appears that Wards Corner's position turns on whether it should have been afforded a third bite at the apple to demonstrate 2014 compliance. Cf. Bristol Univ. v. Accrediting Council for Indep. Colleges & Sch., 691 F. App'x 737, 743 (4th Cir. 2017) ("Although the Accreditation Criteria provide that two years is the maximum amount of time ACICS would give an institution like Bristol to come into compliance, ACICS was not required to provide Bristol any minimum amount of time to remedy its deficiencies. Even so, after finding Bristol noncompliant, ACICS did not promptly withdraw Bristol's accreditation but instead provided Bristol with clear deadlines within which to fix deficiencies.").

[5] To the extent Plaintiff makes the assertion on summary judgment that the withdrawal decision was not based on the "noticed" non-compliant graduation rate, even after construing the facts in Plaintiff's favor, the record plainly establishes that three compliance failures were identified as reasons for the withdrawal decision, including Wards Corner's failure to demonstrate a compliant graduation rate. In light of the deference owed to NACCAS's decision, the Court rejects Wards Corner's contention that NACCAS acted improperly by placing the onus on Wards Corner to demonstrate a compliant graduation rate, particularly in light of the fact that Wards Corner elected to submit backup documentation for only a sampling of its 2014 students when it submitted its final supplement to avoid losing accreditation.

9

NACCAS appeals process,[6] all conformed with fundamental principles of fairness. This is not to say that Defendant acted without mistake throughout the process, nor to say that this Court would reach the same accreditation decision if called upon to perform a de novo adjudication of Ward's Corner's compliance; those questions, however, are simply not before this Court.

In light of the potential for remand in this case for a de novo accreditation review based on Wards Corner's allegations of bias, this Court finds it appropriate to avoid a more detailed summary judgment analysis in order to limit the possibility of prejudicing any future remand proceeding. The Court therefore reiterates that its ruling is based on the accreditation record currently before the Court, reviewed under the highly deferential review standard established by Prof'l Massage. Based on such record, and the deferential standard of review, the Court finds that NACCAS provided Ward's Corner with "significant procedural opportunities to make its case over the course of [approximately 15 months] prior to the revocation of accreditation," and that it required Wards Corner to comply with "discernible substantive standards." Prof'l Massage, 781 F.3d at 172-73. Defendant's summary judgment motion is **GRANTED**, in

---

[6] Given the appropriate deference, based on NACCAS's appeals procedure, which in some ways is similar to a judicial appeals procedure, Wards Corner fails to demonstrate that "new" evidence advanced by Plaintiff for the first time on appeal should have been considered by the NACCAS appellate panel.

part, to the extent that Plaintiff challenges the length of the remediation period afforded by NACCAS, whether the withdrawal decision was predicated on Plaintiff's failure to demonstrate a compliant graduation rate, whether Plaintiff was afforded an adequate appeal consistent with NACCAS's procedures, and any other claim or subclaim unrelated to the allegations of bias. See Sojourner-Douglass Coll. v. Middle States Ass'n of Colleges & Sch., 685 F. App'x 209, 210 (4th Cir. 2017) ("Federal courts do not undertake to re-weigh conflicting evidence, make credibility determinations, or substitute their judgment for that of the agency"; rather, the "elementary principles of administrative law call for significant, though not total, deference to decisionmaking by accreditation agencies" and the reviewing Court's emphasis must be on the "procedural fairness in the accreditation agency's decision.") (internal quotation marks and citations omitted). Defendant's motion for summary judgment on the issue of bias is **DENIED** based on factual disputes and conflicting rational inferences to be drawn from the relevant facts, and the Court will proceed to a bench trial/evidentiary hearing on the issue of bias as outlined below. Plaintiff's motion for partial summary judgment is **DENIED** in its entirety.

## B. Damages at Trial/Hearing on Bias

### 1. Parties' Positions

Plaintiff's supplemental brief asserts that Plaintiff should be permitted to proceed to a jury trial on its claim for monetary damages resulting from the denial of the right to an impartial decisionmaker. ECF No. 123. Specifically, Wards Corner contends that if the factfinder determines at the conclusion of trial that the accreditation decision was not made by a fair tribunal, "Wards Corner would be entitled to damages," including "lost revenues" which are the direct result of a ruling by "a biased decision maker." ECF No. 123, at 6. Defendant's supplemental brief disputes such assertion, arguing that "[a]ssessing damages at this stage" would be inappropriate even if Plaintiff succeeds on its bias claim, and that the appropriate remedy would instead be remand to NACCAS to allow its Commission to determine anew, without the participation of any individuals with a pecuniary interest in the outcome, whether the February 2016 record demonstrates that Plaintiff's accreditation should be continued, or withdrawn. ECF No. 125, at 7-10.

The parties' briefs on summary judgment reflect conflicting legal positions as to whether Wards Corner has the burden to demonstrate that any alleged conflict of interest actually caused an injury. See ECF No. 99, at 10-13 (reflecting

Plaintiff's assertion that Wards Corner is not relying on the cited "fair tribunal" cases in order to "challenge NACCAS's accreditation decision"; rather, the cases are cited "to challenge the fairness of the decision making process" in support of Plaintiff's assertion that the conflict of interest alleged in this case resulted in a <u>potential</u> for bias that is impermissibly high); ECF No. 71, at 27-28 (reflecting Defendant's argument that, even if a conflict existed, it had no effect on the outcome); cf. <u>St. Andrews Presbyterian Coll. v. S.</u> <u>Ass'n of Colleges & Sch., Inc.</u>, 679 F. Supp. 2d 1320, 1333 (N.D. Ga. 2009) (finding that the plaintiff "failed to show that the alleged conflict caused it any injury or otherwise affect[ed] the accreditation process"); <u>Williams v. Pennsylvania</u>, 136 S. Ct. 1899, 1909 (2016) ("The Court has little trouble concluding that a due process violation arising from the participation of an interested judge is a defect 'not amenable' to harmless-error review, regardless of whether the judge's vote was dispositive.") (citation omitted). Having surveyed the relevant law on this issue, the Court finds that whether a plaintiff must prove an injury stemming from the bias turns on whether such plaintiff seeks to prove only a procedural due process violation (that it was denied an impartial decisionmaker) or whether it also seeks to prove a substantive harm resulting from such violation (that the denial of a fair hearing resulted in a

different outcome than would have been reached by an impartial decisionmaker). Here, because Plaintiff asserts the right to a damages trial, the distinction between a procedurally defective proceeding that produces a substantively defective result, and a procedurally defective proceeding that produces a substantively valid result, supported by substantial evidence, is critical to resolving the parties' conflicting positions.

## 2. Procedural Deprivation Insufficient to Prove Damages

As summarized in an administrative law treatise discussing remedies for constitutional due process violations:[7]

> [W]ith respect to procedural due process violations, th[e] opportunity [for damages] may be more apparent than real. The Supreme Court in Carey v. Piphus, 435 U.S. 247 (1978), affirmed the availability of damages for procedural due process violations but limited damages to compensatory damages. That is[,] one must prove injury from the failure to provide the constitutionally mandated procedures. Usually this requires proof that one would have prevailed had an adequate hearing been conducted.

1 Admin. L. & Prac. § 2:25 (3d ed.). Subsequent to the Supreme Court's decision in Carey, the Fourth Circuit expressly extended Carey's application to all cases where "the only constitutional deprivation suffered is procedural in nature." Burt v. Abel, 585 F.2d 613, 616 (4th Cir. 1978) (emphasis added). The Fourth Circuit went on to explain that even when dealing with a constitutional due process violation that is "actionable under

---

[7] The instant case involves common law due process rights, not constitutional due process rights; however, the scope of the latter certainly informs an analysis of the former.

§ 1983," if the record demonstrates that the adverse action being challenged was in fact based on "just cause," but that there was an inadequate hearing before such adverse determination was made, the proven deprivation is <u>procedural only</u>. <u>Id.</u> Although a procedural violation can support a § 1983 claim for damages in certain limited circumstances, "[i]n order for a plaintiff who has suffered a deprivation of procedural due process to recover more than nominal damages, he must also prove <u>that the procedural deprivation [itself] caused some independent compensable harm</u>." <u>Id.</u> (emphasis added). Accordingly, "mental and emotional distress stemming from the denial of [procedural] due process, <u>but not from the justified deprivation of the substantive right</u>, are [ordinarily] the only items of compensable harm . . ." in a case involving a <u>procedural</u> due process violation.[8] <u>Id.</u> (emphasis added). Stated another way, "in most cases, a plaintiff who suffers only a procedural deprivation will recover no more than nominal damages."[9] <u>Id.</u>

_____

[8] The instant case does not involve an individual plaintiff, as contrasted with an entity, that could conceivably suffer emotional distress stemming directly from the asserted bias/conflict of interest. Moreover, the instant case does not involve a statute providing for damages.

[9] In <u>Burt</u>, and other cases that follow herein, the respective court addresses the denial of a <u>constitutional</u> due process claim, and the concomitant right to nominal damages, in the absence of actual damages, as compensation for the <u>constitutional</u> violation. <u>Cf.</u> <u>Dawkins v. Huffman</u>, 25 F. App'x 107, 107 (4th Cir. 2001) (explaining that Supreme Court precedent requires an award of nominal damages when a <u>constitutional violation</u> is proven but there are not otherwise compensable damages). In contrast, here, the right at issue is the judicially recognized <u>common law</u> right to procedural due process in an accreditation decision, and Plaintiff has not

Such rule recognizes that if a procedurally defective process and a procedurally proper process would yield precisely the same result, the consistency in the outcomes eliminates any proximate harm from the procedural deprivation. See Dargis v. Sheahan, 526 F.3d 981, 989 (7th Cir. 2008) ("[W]here a plaintiff would have suffered the same fate had the required hearing been held, he is not entitled to recover damages caused by the suspension.").

### 3. Trial/Hearing Limited to Procedural Violation Claim

Turning back to the instant matter, this Court begins with the standard provided by Prof'l Massage, which holds that "an administrative decisionmaker [is] entitled to a presumption of honesty and integrity," and federal courts are authorized to look behind the motivations of such decisionmakers only upon a "strong showing of bad faith or improper behavior." Prof'l Massage, 781 F.3d at 177-78 (alteration in original) (internal quotation marks and citations omitted). Although Wards Corner's primary contention appears to be that it was harmed because a biased decisionmaker improperly participated in the accreditation review process (along with more than ten unbiased

cited any case law suggesting that nominal damages are available in such context. Moreover, as the Court concludes below, because the remedy for a procedural harm resulting from any common law procedural due process violation (versus a constitutional or civil rights violation) is remand, nominal damages are not available. See Gibson v. BSA, 163 Fed. Appx. 206, 211 (4th Cir. 2006); Bailey v. Wash. Area Council of Eng'g Labs., Civ. Action No. 5:14-cv-59, 2017 U.S. Dist. LEXIS 97805, at *36-37, 41-42 (W.D. Va. June 23, 2017).

decisionmakers), Plaintiff also advances, as a secondary basis, the largely speculative contention that the claimed bias had an actual impact on the outcome of accreditation proceedings. While expansion of the record is not typically available in accreditation review cases, some discovery was permitted in this case, and such discovery revealed that reasonable minds could differ as to whether the alleged bias resulted in the denial of procedural due process; therefore, a trial is warranted on Plaintiff's primary assertion. As "the burden of establishing a disqualifying interest rests on the party making the assertion," Schweiker v. McClure, 456 U.S. 188, 196 (1982), at trial, Plaintiff will have the opportunity to demonstrate that one of several individuals involved in the accreditation withdrawal process was actually biased, or that such individual had a "potential for bias [that] is impermissibly high" such that NACCAS's own rules precluded him from participation in the withdrawal decision. Prof'l Massage, 781 F.3d at 178.[10] If successful on such claim, remand is appropriate even in the absence of proof that the bias caused NACCAS to withdraw accreditation. See Escuela de Medicina San Juan Bautista, Inc. v. Liaison Comm. on Med. Educ., 820 F. Supp. 2d 317, 319 (D.P.R.

---

[10] Even in the absence of proof that the asserted pecuniary interest drove the accreditation decision, it is well-established that such a conflict, if proven, is a type of bias or potential bias of the highest order. See Prof'l Massage, 781 F.3d at 178 (noting that "the potential for bias is impermissibly high" in cases involving an adjudicator with a pecuniary interest in the outcome); see also Williams, 136 S. Ct. at 1909.

2011) (recognizing that "the essence of due process is the opportunity to have a fair hearing," and that even where there "is no evidence of improper conduct," the biased member of the accreditation appeals panel "could have tainted the decision process," rendering the proper remedy remand for an "ab initio" appeals proceeding); Cf. Gibson v. BSA, 163 Fed. Appx. 206, 211 (4th Cir. 2006)(noting in the analogous state context that Virginia courts award injunctive relief rather than nominal damages to vindicate violation of the common law right to fair procedure).

Although the record, as supplemented, warrants a trial/evidentiary hearing on Plaintiff's primary contention that it was harmed because a biased decisionmaker improperly participated in the accreditation review process, it does not similarly support a trial/evidentiary hearing on Plaintiff's secondary contention that such bias had an actual impact on the outcome of the accreditation review process. Rather, in light of the "presumption of honesty and integrity" of all of the other non-biased decisionmakers that participated in the review process, the lack of any evidence whatsoever calling such integrity into question, the somewhat modest pecuniary interest that forms the alleged bias, the fairly limited participation of the allegedly biased individual in the actual withdrawal decision, and the documentary evidence supporting NACCAS's

decision to withdraw accreditation, to include numerous documents created by unbiased NACCAS' staff long before the allegedly biased individual played any role in the accreditation process, the Court finds that it would exceed the limited judicial review authorized by Prof'l Massage if it conducted a bench trial, jury trial, or any other further expansion of the record as to this secondary contention. Stated simply, having been afforded the rare opportunity to supplement the administrative record through discovery in an accreditation review action, Wards Corner has failed to uncover evidence on which a reasonable factfinder could conclude that the allegedly biased adjudicator steered, rather than impermissibly participated in, the withdrawal decision.

The Court therefore rejects Plaintiff's contention that "were the [factfinder] to rule that Wards Corner's due process was violated by the conflict of interest, Wards Corner would be entitled to [monetary] damages," including "lost revenues." ECF No. 123. Instead, remand is the only available remedy should Plaintiff demonstrate a procedural due process violation at trial.[11] See Escuela de Medicina San Juan Bautista, 820 F. Supp.

---

[11] Notwithstanding Plaintiff's contention that monetary damages are available in the rare case where an accreditation agency "run[s] off the rails" and proven bias drives such agency to withdraw accreditation without any valid substantive basis, the record before this Court does not present such scenario. Prof'l Massage, 781 F.3d at 169. First, this Court concluded above that, at least within the dictates of the deferential Prof'l Massage review standard, the withdrawal decision was

2d at 319; 3 Admin. L. & Prac. § 8:31 (3d ed.) (noting that, in proceedings governed by the APA, on occasion, the Court orders an agency to conduct a "new proceeding," and that "[i]n particular, a court might be inclined to order a corrective hearing if it finds a violation of procedural due process"); Burt, 585 F.2d at 616 (explaining that in the absence of proof of "actual injury" stemming from a procedurally defective discharge constituting an independent constitutional tort actionable under 42 U.S.C. § 1983, only nominal damages are available); Williams v. Hobbs, 662 F.3d 994, 1010-11 (8th Cir. 2011) (concluding that nominal damages are the only proper recovery for a constitutional violation that is not accompanied by any actual provable injury and that one dollar is the maximum award for each hearing conducted in a constitutionally defective manner). Such finding is consistent with the Seventh Circuit's ruling in Dargis v. Sheahan, a § 1983 action involving due process violations and alleged violations of the Americans with Disabilities Act. Dargis, 526 F.3d at 982-83. The plaintiff in Dargis appealed to the Seventh Circuit after the district court declined to conduct a damages trial on the proven due process

---

not arbitrary or unreasonable or an abuse of discretion. Second, after some expansion of the record was permitted, the evidence on the issue of bias, which takes the form of a somewhat modest pecuniary interest, is insufficient to demonstrate any likelihood that the bias had an impact on the outcome, particularly in light of the participation of numerous unbiased individuals who - the Court is required to presume - acted in good faith.

violation, with the district court instead remanding the case to allow the Defendant's former employer the opportunity to perform the previously denied hearing. Id. In affirming the district court's ruling, the Seventh Circuit explained as follows:

> [The plaintiff] next argues that after finding that his procedural due process rights . . . were violated, the district court ordered the wrong remedy by merely directing the Sheriff's Office to hold a Merit Board hearing . . . . [The plaintiff instead] claims that the appropriate course would have been for the district court to proceed to trial on his claim for damages, attorney's fees, and other appropriate relief. . . .
>
> . . .
>
> We conclude that the district court acted appropriately in directing the Sheriff's Office to conduct a hearing instead of proceeding to trial on damages. "Procedural due process rules are meant to protect persons not from the deprivation, but from the mistaken or unjustified deprivation of life, liberty, or property." Carey v. Piphus, 435 U.S. 247, 259 (1978) (emphasis added). For this reason, where a plaintiff would have suffered the same fate had the required hearing been held, he is not entitled to recover damages caused by the suspension. Id. at 260 (agreeing with the court of appeals that to award damages for injuries caused by a justified suspension imposed without a hearing would amount to a windfall rather than compensation). If the placement of [the plaintiff] on involuntary unpaid leave was justified based on his physical condition, then awarding him the damages sought would result in the type of windfall discussed in Carey.

Dargis, 526 F.3d at 988-90.

Summarizing the above, the "trial/evidentiary hearing" to be held in this case, on the issue of whether Defendant followed its own policies and procedures regarding conflicts of interest,

21

will therefore be limited to determining whether Plaintiff has demonstrated a <u>procedural</u> due process violation because a biased decisionmaker improperly participated in the accreditation review process.[12]

## C. Trial by Jury

### 1. Parties' Positions

Wards Corner asserts that it has the right to a jury trial on the claim that it was denied the common law due process right to an impartial decisionmaker. ECF No. 123. Without citing to case law in the fields of accreditation and/or administrative law, Plaintiff argues that the Seventh Amendment right to a trial by jury applies in this case.[13] Plaintiff's primary argument in support of such assertion is the contention that Plaintiff's due process claim sounds in tort and seeks monetary damages, and is therefore a "legal" claim that warrants a jury. Defendant asserts that no jury right attaches. For the reasons set forth below, the Court finds that Plaintiff does not have the right to a jury trial to determine whether NACCAS, an

---

[12] The Court agrees with Defendant's position that, if a procedural due process violation is proven, this Court should both: (1) remand the case to NACCAS for a <u>de novo</u> review before unbiased members of the Commission; and (2) retain jurisdiction over the disputed issues until after the remanded issue is resolved by the NACCAS Commission. ECF No. 125. Accordingly, Plaintiff may have the ability to renew its claim for damages in this Court at a later time should it succeed on remand.

[13] Plaintiff concedes that the requested declaratory and/or injunctive relief sought in Count Two of its Amended Complaint must be determined by the Court.

accreditation agency, committed a procedural due process violation.

## 2. APA Cases Provide Compelling Guidance

Critically, Plaintiff's pending cause of action before this Court is in the nature of an administrative appeal, and <u>the primary factfinder in the underlying dispute being reviewed was not a jury</u>, but instead, a quasi-public agency. "[W]hile the [APA] does not specifically apply to [accreditation agencies], principles of administrative law are useful in determining the standard" by which federal courts review such an agency's decision-making process. <u>Prof'l Massage</u>, 781 F.3d at 170 (second alteration in original) (quoting <u>Thomas M. Cooley Law Sch. v. Am. Bar Ass'n</u>, 459 F.3d 705, 712 (6th Cir. 2006)). Case law under both the federal APA and state administrative procedure act counterparts repeatedly recognizes that, in the absence of a specific statutory grant to the contrary, there is no right to a jury trial in administrative proceedings. <u>See</u> <u>N.L.R.B. v. Jones & Laughlin Steel Corp.</u>, 301 U.S. 1, 48 (1937) (concluding that the "statutory proceeding" in that case, an unfair labor practices claim before the National Labor Relations Board, was a special proceeding "unknown to the common law" at the time the Seventh Amendment was adopted for which a right to a jury trial did not attach, further explaining that the Seventh Amendment "has no application to cases where recovery of money

damages <u>is an incident to equitable relief</u> even though damages might have been recovered in an action at law") (emphasis added); <u>Curtis v. Loether</u>, 415 U.S. 189, 194 (1974) ("<u>Jones & Laughlin</u> merely stands for the proposition that the Seventh Amendment is generally inapplicable in administrative proceedings, where jury trials would be incompatible with the whole concept of administrative adjudication"); <u>W. Radio Servs. Co. v. U.S. Forest Serv.</u>, 578 F.3d 1116, 1123 (9th Cir. 2009) ("The APA does not provide for monetary damages, though it does allow 'specific relief,' including the payment of money to which a plaintiff is entitled. Nor does the APA allow claims against individuals or provide a right to a trial by jury.") (internal citation omitted); <u>Benjamin v. Traffic Exec. Ass'n—E. Railroads</u>, 688 F. Supp. 903, 909 (S.D.N.Y. 1988), <u>aff'd sub nom. Benjamin v. Traffic Exec. Ass'n E. Railroads</u>, 869 F.2d 107 (2d Cir. 1989) ("The seventh amendment requires a jury trial in actions to enforce rights and remedies traditionally enforced at common law. . . . However, the seventh amendment is generally inapplicable in administrative proceedings, where the factfinder possesses a particular expertise that makes jury determination inappropriate."); <u>Mayes v. E.P.A.</u>, No. 3:05cv478, 2006 WL 2709237, at *3 (E.D. Tenn. Sept. 20, 2006) ("Judicial review of a federal agency decision . . . is a review of the agency's administrative record pursuant to the APA" and "[s]uch claims

24

are not subject to trial by jury."); <u>Pellicano v. Office of</u> <u>Pers. Mgmt.</u>, No. 3:11cv405, 2012 WL 4103891, at *3 (M.D. Pa. Sept. 18, 2012) (finding that "it is well settled that a jury trial is not available" as part of the "judicial review" in an APA case); <u>City of Dania Beach, Florida v. U.S. Army Corps of</u> <u>Engineers</u>, No. 12-60989-CIV, 2012 WL 12864329, at *2 (S.D. Fla. Sept. 25, 2012) (granting a motion to strike a jury demand because "it is apparent that Plaintiffs are not entitled to a jury trial under the APA"); <u>Dep't of Transp. v. Del-Cook Timber</u> <u>Co.</u>, 248 Ga. 734, 742, 285 S.E.2d 913, 919-20 (1982) ("There is no constitutional right to a jury trial in these administrative proceedings."); <u>Jones v. Reed</u>, 267 Ark. 237, 248-49, 590 S.W.2d 6, 12-14 (1979) (finding that a statutory right to a "de novo" trial "certainly does not require a jury trial," as "the so-called statutory 'appeal' from administrative agency action is only an adaptation, or perhaps extension, of <u>judicial review of</u> <u>such proceedings</u> which has always been available by certiorari, quo warranto, or other such writs"); <u>Carr v. S. Dakota Dep't of</u> <u>Labor, Unemployment Ins. Div.</u>, 355 N.W.2d 10, 12-13 (S.D. 1984) ("We hold that . . . administrative appeals under the [South Dakota] APA are special proceedings, not a case at law protected by the constitutional guarantee" of a trial by jury); <u>Nat'l</u> <u>Velour Corp. v. Durfee</u>, 637 A.2d 375, 381 (R.I. 1994) (explaining that "no jury-trial right adhered at the

25

administrative-agency level because the Legislature had the power to create a right and then assign adjudication of that right to an administrative forum," and that the "same logic requires the conclusion that the Legislature has the power to place appellate review of that adjudicated violation in Superior Court sitting without a jury"); see also Wright & Miller, et al., 9 Fed. Prac. & Proc. Civ. § 2302.2 (3d ed.) ("[I]t appears that when Congress determines that administrative, rather than judicial, adjudication and remedies are appropriate, it may so provide, and the Seventh Amendment will not compel a jury trial in those proceedings."); Sunshine Co. Food Distrib., Inc. v. U.S. Citizenship & Immigration Servs., 362 F. App'x 1, 4-5 (11th Cir. 2010) (explaining that the Declaratory Judgment Act preserves the right to a jury trial but does not create a jury right, and the district court therefore did not err in striking the jury demand predicated on the Declaratory Judgment Act in a "suit for judicial review over an agency"); Cooley, 459 F.3d at 710-11 (explaining that there is no private right of action to enforce the HEA, but that pursuant to the exclusive grant of federal jurisdiction over accreditation cases, such disputes can be resolved "through a common law claim for due process and adequate judicial review") (emphasis added).

Here, the Fourth Circuit has not only instructed this Court to take guidance from APA cases when evaluating accreditation

decisions, but federal courts have recognized that "judicial review of accreditation decisions is more limited than review under the [APA]." Cooley, 459 F.3d at 713 (emphasis added). Accordingly, Wards Corner fails to demonstrate a Seventh Amendment right to a jury trial in conjunction with the judicial review of NACCAS's withdrawal decision, as the limited right to judicial review of an accreditation action is not "an ordinary civil action in the district courts . . . involv[ing] rights and remedies of the sort typically enforced in an action at law." Curtis, 415 U.S. at 195. The deferential analysis this Court is called on to perform requires inquiry into whether, during an "administrative" process, the accreditation entity that made administrative factual findings followed its own policies and procedures—here, procedures associated with avoiding conflicts of interest. The resolution of such issue, even if predicated in part on disputed facts that were not developed during the administrative process, is a matter for the Court, not a jury.

### 3. Plaintiff's Cause of Action is Equitable

Further supporting the above finding, although Plaintiff's due process claim is properly labeled as grounded in the "common law," the law underlying such claim is not traditional "common law" in place at the time the Seventh Amendment was adopted, but rather, is federal common law formulated in the last century for

27

the purpose of operating as an equitable check on entities that operate in an arena of "public concern." See Prof'l Massage, 781 F.3d at 169 ("Courts began to recognize this common law duty as early as 1938.") (citing cases); Cooley, 459 F.3d at 712 ("Courts developed the right to common law due process as a check on organizations that exercise significant authority in areas of public concern such as accreditation and professional licensing.") (emphasis added); Bailey v. Washington Area Council of Eng'g Labs. (WACEL), No. 5:14cv59, 2015 WL 5560544, at *5-*7 (W.D. Va. Apr. 28, 2015), report and recommendation adopted sub nom. Bailey v. Washington Area Council of Eng'g Labs., 2015 WL 5560545 (W.D. Va. Sept. 21, 2015) (explaining that the judicially developed rule permitting courts to "intervene in the operations" of non-public entities and "require them to employ basic due process or fair procedure when making decisions" is a doctrine that "represents a departure from the traditional rule that courts do not interfere with the internal affairs or membership decisions of private, voluntary organizations") (emphasis added). This equitable check has underpinnings in federal statute (the Higher Education Act of 1965, ("HEA")), and the reality that both federal funding and the value of a degree/certificate to a former student are critically linked to the institution's ability to maintain its accreditation. Prof'l Massage, 781 F.3d at 170-71. Opinions like Prof'l Massage, from

within and outside this Circuit, demonstrate that this circumscribed form of judicial review is grounded in equity.

This Court's interpretation of the claim at issue as both administrative and equitable is bolstered by the fact that no private cause of action exists under the HEA, nor is the instant case a § 1983 action;[14] rather, to promote the public interest in fair accreditation standards, federal courts permit greatly circumscribed <u>judicial</u> review of an administrative-like accreditation decision to ensure that accreditation bodies "play it straight." <u>Id.</u> at 170; <u>see</u> James A. Rapp, Education Law § 3.08[11][a] (2017) ("The primary function of judicial intervention is to ensure fairness"); <u>Cooley</u>, 459 F.2d at 713 ("Courts have made the policy decision to ensure that [accreditation] organizations act in the public interest and do not abuse their power, but judicial review is limited to protecting the public interest"). Even assuming that, in a rare case, a plaintiff could recover monetary damages "incident to" the equitable relief obtained, such fact alone would not appear to convert the available "judicial review" process into a tort-like cause of action at law requiring a jury trial on the

---

[14] <u>Cf.</u> <u>City of Monterey v. Del Monte Dunes at Monterey, Ltd.</u>, 526 U.S. 687, 709 (1999) (explaining that although there was no equivalent to a § 1983 action when the Seventh Amendment was adopted, the Seventh Amendment jury right extends to newly formulated statutory private rights of action that "sound in tort," and § 1983 actions plainly "sound in tort"); 42 U.S.C. § 1983 (expressly creating a personal cause of action that allows an individual to bring "an action at law" to rectify the deprivation of rights).

equitable relief-here, remand. The Seventh Amendment, therefore, does not provide the right to a trial by jury in these circumstances.[15]

Alternatively, the Court finds that even if a jury trial were available on certain fact patterns involving the ruling of an accreditation body, such as a case where the record before the Court suggests substantive harm flowing from accreditation being withdrawn without any colorable basis, the instant case does not present such a circumstance. Drawing a parallel to cases involving a statutory cause of action:

> In Tull v. United States, 481 U.S. 412 (1987) the Supreme Court articulated a two-part test for determining whether a statutory cause of action is a suit at common law for Seventh Amendment purposes. . . . Under this two-part test, the trial court first must compare the statutory actions to 18th century actions brought in the courts of England prior to the merger of law and equity. . . . Under the second part of the two-part test developed in Tull, the trial court must examine the remedy sought and determine whether it is legal or equitable in nature. . . . Justice Brennan, writing for the Supreme Court in Tull, emphasized that the characterization of the relief sought was more important to the historical test than finding a precise historical analog to the cause of action. That view has been pressed in many other cases. . . .

Wright & Miller, 9 Fed. Prac. & Proc. Civ. § 2302.2 (emphasis added) (internal quotation marks and footnotes omitted).

---

[15] In response to the Court's request for additionally briefing on the issue of whether Plaintiff had the right to a jury trial, the parties failed to cite to any cases holding that a right to a jury trial attaches to the judicial review of an accreditation body and/or cases holding that a jury trial right attaches to a claim seeking to enforce common law due process.

Considering the first prong of the test articulated in Tull, as indicated above, judicial review of an accreditation agency's action is a special proceeding similar to the judicial review of a ruling by an administrative body pursuant to the APA. Moreover, even if Wards Corner is correct that similarities can be drawn to a historical tort action, the second and arguably more important prong of the Tull test demonstrates that the only question that this Court may properly reach on these case-specific facts, and still remain within the confines of the limited review authorized by Prof'l Massage, is whether Plaintiff is entitled to remand and/or reinstatement—both of which are remedies in equity. Cf. Chauffeurs, Teamsters & Helpers, Local No. 391 v. Terry, 494 U.S. 558, 569 (1990) ("The Seventh Amendment question depends on the nature of the issue to be tried rather than the character of the overall action." (quoting Ross v. Bernhard, 396 U.S. 531, 538 (1970))). Success at trial for Plaintiff would involve setting aside the ruling of a "quasi-public body," and although the parties to this action disagree as to the precise contours of a remand order, if Plaintiff's view prevails, relief would include ordering, at least on a temporary basis, reinstatement of accreditation in order to return the parties to the position they were in prior to the entry of the procedurally faulty ruling. See Griggs v. E.I. DuPont de Nemours & Co., 237 F.3d

31

371, 385 (4th Cir. 2001) (discussing "reinstatement, as a general equitable concept"); cf. Gibson, 163 Fed. Appx. at 211 (noting Virginia courts award injunctive relief rather than nominal damages to vindicate violation of the Virginia common law right to fair procedure, which is a common law tort claim and not a constitutional or civil rights deprivation claim or common law tort claim for which vindication of a legal right is not otherwise available, and citing Berrien v. Pollitzer, 83 U.S. App. D.C. 23, 165 F.2d 21, 23 (D.C. Cir. 1947) for proposition that it allowed only relief in equity for fair procedure violation); cf. Bailey, 2017 U.S. Dist. LEXIS 97805, at *42-43 (noting that typical remedy for violation of Virginia common law right to fair procedure is "injunctive relief, such as reinstatement or a renewed disciplinary or appeal procedure"). Accordingly, the Court alternatively finds that Wards Corner is not entitled to a jury trial based on the nature of the claim, and the nature of available relief, with respect to the only issue to be tried in this case.

### D. Summary

For the reasons set forth above, Plaintiff's motion for partial summary judgment is **DENIED**, ECF No. 63, and Defendant's motion for summary judgment is **GRANTED**, in part, and **DENIED** in part, ECF No. 70.

The Court will conduct a bench trial/evidentiary hearing to begin on November 28, 2017, which will be limited to receiving evidence directly relevant to Plaintiff's claim that it was denied procedural due process based on the denial of the right to an "impartial decisionmaker." Evidence of alleged monetary damages will not be permitted.

In light of the short time before trial, the parties are not required to submit proposed findings of fact and conclusions of law prior to the commencement of the bench trial, although they are certainly permitted to submit such filings if so inclined. The Court reserves the right to order both parties to submit post-trial/hearing briefing and/or findings of fact and conclusions of law, outlining their factual and legal position regarding the Court's finding on bias, as well as whether Plaintiff's accreditation should be restored in the event that remand is ordered. The Clerk is **REQUESTED** to send a copy of this Opinion and Order to all counsel of record.

**IT IS SO ORDERED.**

/s/ ꟽꟾꟽ

Mark S. Davis
UNITED STATES DISTRICT JUDGE

Norfolk, Virginia
November 24 , 2017